**In re ALLIED ARTISTS INDUSTRIES, INC., Debtor.**

**In re ALLIED ARTISTS PICTURES CORPORATION, Debtor.**

**In re ALLIED ARTISTS TELEVISION CORPORATION, Debtor.**

**Bankruptcy Nos. 79 B 587, 79 B 588 and 79 B 607.**

United States Bankruptcy Court, S.D. New York.

March 3, 1983.

Pryor, Cashman, Sherman & Flynn, New York City, for Somerville, et al.

Nixon, Hargrave, Devans & Doyle, New York City, for Filmtransac A.G.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for Allied Artists Pictures Creditors Committee.

MEMORANDUM & ORDER

JOHN J. GALGAY, Bankruptcy Judge.

Filmtransac, A.G. ("Filmtransac"), an outside producer of films, seeks payment of

monies due upon the alleged assumption and assignment of its motion picture distribution agreement by Allied Artists Pictures Corp. ("Pictures"). Pictures, Allied Artists Industries, Inc. ("Industries"), and Allied Artists Television Corp., ("Television"), are debtors in the Chapter XI case before this Court. Sumire Anstalt and Somerville House Management Ltd. (together referred to as "Somerville"), also outside producers, seek payment of pre-petition and post-petition indebtedness as a priority administration claim, pursuant to the alleged assumption and assignment of its motion picture distribution agreements by the debtors. Alternatively, Somerville asks this Court to direct the debtors to assume or reject the distribution agreements immediately. The Official Creditors' Committee of Pictures ("Pictures Committee") opposes the outside producers applications, arguing that the distribution agreements are not executory contracts, or, alternatively, no assumption by the debtors has occurred and that subsequent events have made the assumption of the distribution agreements unnecessary.

The Court has considered the plethora of papers submitted, the arguments presented and the applicable law. By a previous determination placed on the record before the interested parties, this Court, without reaching the issue whether the distribution agreements are executory contracts, stated that the agreements have not been assumed by the debtors. Thus, no priority administrative claims for outside producer have been created. This memorandum substantiates and memorializes that determination. This Court further determines that independent negotiations and assignment of distribution rights from the outside producers to Lorimar Productions, Inc., ("Lorimar") has rendered unnecessary the debtors' assumption of the distribution agreements in order to assign distribution rights.

1. Repealed by Bankruptcy Reform Act of 1978, 11 U.S.C. § 101 *et seq.;* however, the Act is applicable to cases filed before October 1, 1979. 11 U.S.C. §§ 403(a), 402(a).

*Background*

On April 4, 1979, Pictures and Industries each filed a petition with this Court seeking an arrangement under Chapter XI of the Bankruptcy Act of 1898 [1] ("Act"). Television filed its Chapter XI petition on April 6, 1979. Each debtor was authorized to continue in business as debtor in possession.

On March 14, 1980, an order was made and entered by this Court ("March 14th Order") approving an agreement dated December 30, 1979, as amended February 20, 1980, by and among Pictures, Industries and Television, i.e. the debtors, and Lorimar ("Lorimar Agreement"). The Lorimar Agreement provided for the sale of virtually all of the assets of Pictures and Television and certain assets of Industries to Lorimar, including the motion picture libraries of Pictures (approximately 570 films), Television (26 films) and Industries (one film). The purchase price was $4.5 million, of which $2,250,000.00 (less $58,000.00 credit) was paid on the closing date and the balance was due on April 24, 1981. [2]

By the terms of the March 14th Order, third decretal paragraph, the debtors were "authorized to assume all distribution contracts with outside producers and participants ... and to assign such contracts (except the contracts with respect to films set forth on Exhibit D hereto) to Lorimar. . . ." March 14th Order at p. 4. Distribution agreements for "Exhibit D" films were specifically excluded from the authorization for assumption and assignment because the outside producers of those "Exhibit D" films objected to their transfer to Lorimar. Among the "Exhibit D" films are those in which Filmtransac and Somerville assert ownership rights: "Papillion" (Filmtransac), "Zorro", "The Story of O", and "Conduct Unbecoming" (Somerville). Underlying the Filmtransac and Somerville objections were their assertions that the distribution agreements had been terminated by,

2. Lorimar has not made the second payment, asserting certain deductions and credits under the Lorimar Agreement. The dispute regarding this aspect of the Chapter XI cases is not the subject of the instant proceedings.

*inter alia,* bankruptcy termination clauses and, therefore, could not be assigned to Lorimar.[3] No decision concerning the outside producers' allegations has been made.

Negotiations between Lorimar and objecting outside producers ensued. Filmtransac and Lorimar came to an agreement and Filmtransac avers that it withdrew its objection to transfer of Papillion in August 1981. By a "Consent to Assignment", signed by Emanuel J. Wolf for Pictures, effective August 24, 1981, Filmtransac asserts that Pictures assumed and assigned to Lorimar the Papillion distribution agreement. Filmtransac argues that the March 14th Order authorized such a procedure for assumption and, thus, Filmtransac is entitled to payment of all monies due as an administration expense pursuant to the assumption.

Somerville argues along a similar vein, stating that the assumption procedure set by the March 14th Order was self-implementing. Somerville's attempts in early 1981 to execute an expressed assumption and assignment by Pictures and Pictures' Committee were fruitless. Nonetheless, Somerville avers that upon its consent to assignment to Lorimar, assumption by the debtors was automatic, thus giving rise to Somerville's request for payment of its alleged priority administration claim.

*The March 14th Order*

■ The first issue is whether the debtors have already assumed the distribution agreements with Filmtransac and Somerville. This determination principally depends on how the March 14th Order is construed. The March 14th Order was entered after an extended hearing and should be understood in the context of the record. *See* Transcript of March 14, 1980 (hereinafter "March 14th Transcript").

Filmtransac reads the March 14th Order as creating a procedure for assumption of the Papillion distribution agreement by the debtors without further court action once Filmtransac and Lorimar reach agreement for assignment. Somerville reads the March 14th Order as providing for automatic assumption by the debtors without further court action once Somerville and Lorimar reach an agreement. Despite these slightly different readings, the administration claims of Filmtransac and Somerville rest squarely upon the March 14th Order and whether this Court approved the procedure, automatic or not, for the assumption and assignment of "Exhibit D" films by the debtors without further Court action.[4]

Both Somerville and Filmtransac intersperse their arguments with assertions that assumption may be inferred without Court order. However, neither outside producer has offered any evidence of debtors' con-

3. By complaint dated November 21, 1979, Filmtransac sought relief from the Bankruptcy Procedure 11–44 stay in order to terminate the Papillion distribution agreement. *See also* Affidavit of Donald S. Zakarin, counsel to Somerville, April 28, 1982 at ¶ 5.

4. The paramount importance of the March 14th Order is undiminished by Filmtransac's claim that the debtors assumed the Papillion distribution agreement by the August 24, 1981 "Consent to Assignment" signed by Emanuel J. Wolf for Pictures. Filmtransac's reliance on that document is mistaken for several reasons: (1) Mr. Wolf's authority to execute such a document is unclear; (2) the document concerns assignment with no mention of the debtors' assumption of anything; (3) by August 1981, the second payment under the Lorimar Agreement was well past due and the subject of a major dispute; therefore, the debtors could not have assumed the administration claims liabilities attached to such an act when the funds to satisfy those liabilities remained unpaid; and (4) the validity of such a consent to assumption and assignment without further Court action is contingent upon the implementation of such a procedure by this Court's March 14th Order. If the Court did not approve of such a procedure, the Wolf document is ineffective. Thus, the paramount issue remains: did this Court approve a procedure for the assumption and assignment of "Exhibit D" films without further Court action? Somerville, as noted above, was unable to have the debtors or the creditors committee expressly consent to the assumption of its distribution agreements. Therefore, Somerville relies only upon its interpretation of the March 14th Order as implementing an automatic assumption and assignment procedure once Somerville and Lorimar reached an agreement and regardless of debtors' or Pictures Committees' consent.

duct or statements (apart from the "Consent to Assignment" discussed at n. 4) by which an inference of assumption may be drawn. The outside producers' overriding and crucial argument is that the March 14th Order embodied Court approval of a procedure for assumption and assignment without further court action.[5] The March 14th Order is decisive and the Court now turns to examine it.

The March 14th Order specifically provides for the assumption and assignment of, *inter alia,* contracts regarding distribution of motion pictures. "Exhibit D" films are expressly excluded from this assumption. March 14th Order, Decretal ¶ 3, at p. 4. Decretal paragraph 6 provides for notification by Lorimar to the debtors' Creditor Committee of any *assignment* of distribution agreements of "Exhibit D" films, either by consent of the outside producers or court order. *Id.* at p. 6. Assumption of those "Exhibit D" agreements by the debtors is not mentioned anywhere. The March 14th Order, by its terms, neither authorizes the assumption of "Exhibit D" motion picture distribution agreements nor creates a self-implementing procedure for such assumption.

The outside producers assert that statements made during the March 14 hearing support their contentions. In particular, they place great emphasis on a comment at page 65, where the Court states, in response to an inquiry by counsel to Somerville, that the debtors' counsel "is being given authority to assume and assign, and when he undertakes to assume he will notify you." March 14th Transcript at p. 65, lines 15–17. For several reasons, that lone comment out of a transcript of 95 pages neither constitutes prospective Court approval without further Court action of any subsequent assumption of distribution agreements nor implements any automatic procedure for assumption. First, that comment does not preclude Court approval of any assumption one the debtors determine to assume and notify the outside producers.

Second, the comment indicates that the debtors will *undertake to assume,* thus contradicting Somerville's assertion that the debtors' assumption would be automatic upon the realization of a Somerville-Lorimar agreement. As explained in note 4, *supra,* the August 24, 1981 "Consent to Assignment" cited by Filmtransac did not constitute an assumption by the debtors of the Papillion distribution agreement. Therefore, even if a procedure for the debtors assumption was instituted, it was not automatic (thus overcoming Somerville's claim) and the debtors have not assumed pursuant to such a procedure (thus overcoming Filmtransac's claim). The outside producers and Lorimar have reached separate and presumably valid agreements and the outside producers have consented to the transfer of their films to Lorimar. However, the debtors did not assume those distribution agreements.

Third, a reading of the entire transcript indicates that no self-implementing procedure for assumption was adopted or approved. For example, just prior to the Court's comment at page 65, Somerville's counsel asked whether the debtors are assuming all agreements or only those to which no objection has been raised. Debtors' counsel responded, "We will not assume the contracts with respect to the films in dispute [i.e. "Exhibit D" films] until those disputes are resolved and we are able to assign them to Lorimar. If those disputes are resolved adversely to the debtor so that we are not able to assign them, then we will never assume them." March 14th Transcript at p. 64–5. The disputes concerned the outside producers allegations that the distribution agreements were already terminated. Those disputes have to be resolved by the Court. *Id.* at p. 68; *see also*

---

5. There is no statutory provision dealing with assumption in a Chapter XI case. *See* 8 *Collier on Bankruptcy* ¶ 3.15[6], at p. 204 (14th ed. 1981). The weight of authority indicate that Court approval of any assumption is mandatory with only limited exceptions. *See, e.g., Tex-as Importing Co. v. Banco Popular de Puerto Rico,* 360 F.2d 582, 584 (5th Cir.1966). The outside producers are not disputing the need for such Court approval of assumption, but rather they assert that the March 14th Order and Transcript embodied such approval.

p. 43, lines 7–11 (hearing to approve transfer envisioned). Without resolution of the disputes, assumption was not possible. Those disputes were never resolved. Instead, the outside producers and Lorimar came to a separate agreement by which the films were assigned to Lorimar. But the debtors did not assume the distribution agreements—not by express assumption or conduct, or statement or by any so-called self-implementing procedure. Nor did the debtors' have to assume to permit the assignment. Lorimar and the outside producers struck an agreement; they cannot impose the liabilities of assumption on the debtor without Court approval, or debtors or Pictures Committees' consent.

Equitable considerations support this position as well. Resort to equitable powers of the Bankruptcy Court is appropriate in cases of ambiguity. *See In re Miracle Mart, Inc.*, 396 F.2d 62, 64 (2d Cir. 1968); *In re Texas Consumer Finance Corp.*, 365 F.Supp. 427, 432 (S.D.N.Y.1973); *In re J.M. Fields, Inc., Food Fair Inc., et al.*, 26 B.R. 852 (Bkrtcy.S.D.N.Y.1983). Even if the March 14th hearing and subsequent events introduce an element of ambiguity regarding whether or not the distribution agreements were assumed, it would be inequitable to find that the debtor had assumed the distribution contracts. First, the debtors' would be assuming huge administration obligations with no corresponding benefit. As noted above (at note 2), the second payment under the Lorimar Agreement, of over $2 million has not been made and is the subject of dispute between the debtors and Lorimar. It is inequitable to impose the additional burden of an estimated $1 million to $2 million in administration expenses for the assumption of distribution agreements, for which the debtors have not received payment. Second, Lorimar and the outside producers have made separate, presumably binding agreements, which are valid without the assumption of the distribution agreements by the debtors. Lorimar has the films and the outside producers are receiving whatever their agreements with Lorimar provide. Now, the outside producers come to this Court for the second bite of

the apple—imposition of huge administration claims for the alleged assumption of their distribution agreements. The outside producers cannot get both: (1) an outside agreement with Lorimar without resolution in this Court of the dispute over the distribution agreements; and (2) imposition of administrative expenses on these Chapter XI debtors without Court approval.

Finally, although in an equivocal position regarding the status of their distribution agreements, the outside producers were not without recourse. They could have petitioned this Court for a declaration that their agreements were assumed or a direction that the debtors assume. *See In re Greenpoint Metallic Bed Co.*, 113 F.2d 881, 884–4 (2d Cir.1940), *citing Mohonk Realty Corp. v. Wise Shoe Stores, Inc.*, 111 F.2d 287 (2d Cir.1940); *Texas Importing Co. v. Banco Popular de Puerto Rico*, 360 F.2d 582, 584–5 (5th Cir.1966); *In re J.M. Fields, Inc., et al.*, at 856.

Indeed, exercise of this power by a party to an alleged executory contract to protect its rights has been construed as an affirmative duty. *See In re Food World, Inc.*, 3 B.C.D. 1058, 1060 (Bkrtcy.S.D.Ohio 1976); *In re Bohack Corp.*, 2 B.C.D. 396, 397 (Bkrtcy.E.D.N.Y.1976); *In re J.M. Fields, Inc., et al.*, at 857. No such simple efforts were undertaken by the outside procedures during the entire pendency of this matter until now.

For the reasons stated above, any ambiguity in the interpretation of the March 14th Order in light of the March 14th hearing and subsequent events should be construed adversely to any alleged assumption by the debtors of the outside producers' distribution agreements.

### Should Debtors Be Compelled to Assume or Reject?

If the distribution agreements are not deemed assumed, Somerville seeks the alternate relief of a Court direction that the debtors be compelled to assume or reject the distribution agreements now. If the debtors assume, an administration claim will arise. If the debtors reject the agree-

ments, Somerville avows an intent to sue Lorimar.

As noted earlier, the Court has not ruled nor need we rule whether these distribution agreements are executory contracts. Because of the subsequent agreements between Lorimar and the outside producers, questions arise whether the distribution agreements remain executory and whether the entire issue of assumption or rejection is now moot. The outside producers have made separate arrangements with Lorimar. Lorimar possesses the films with the outside producers' consents. The outside producers are being paid by Lorimar. Such an arrangement is presumably valid regardless of the assumption or rejection of the distribution agreements by the debtors.

Under such circumstances, the Court will not direct the debtors to assume the agreements thus creating administration expenses without any corresponding benefit to the debtors. It is unclear whether the debtors should formally reject the distribution agreements in order to, *inter alia,* fix the unsecured claims of the outside producers. The Court will not direct the debtors to reject but will entertain such an application if and when the debtors think such an action is appropriate.

It is so ordered.