**In re ALLIED ARTISTS INDUSTRIES, INC., Debtor.**

**In re ALLIED ARTISTS PICTURES CORPORATION, Debtor.**

**In re ALLIED ARTISTS TELEVISION CORPORATION, Debtor.**

**No. 83 Civ. 2984 (RLC).**

United States District Court,
S.D. New York.

Nov. 16, 1983.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for Official Creditors' Committee of Allied Artists Pictures Corp.; Martin F. Brecker, Louis A. Scarcella, Jeffrey B. Sklaroff, New York City, of counsel.

Nixon, Hargrave, Devans & Doyle, New York City, for appellant Filmtransac, A.G.; Francis E. Kenny, D. Bruce Kratz, Jeffrey G. Wright, New York City, of counsel.

Pryor, Cashman, Sherman & Flynn, New York City, for appellants Sumire Anstalt and Somerville House Management, Ltd.; Joseph Z. Epstein, Donald S. Zakarin, New York City, of counsel.

Angel & Frankel, New York City, for debtors.

## OPINION

ROBERT L. CARTER, District Judge.

Sumire Anstalt and Somerville House Management, Ltd. (together, "Somerville") and Filmtransac, A.G. appeal from a March 3, 1983 Order of the Bankruptcy Court (Galgay, J.) denying their applications for orders requiring Allied Artists Pictures Corporation ("Pictures"), the debtor in a Chapter XI proceeding, to pay them monies owing under film distribution contracts as priority administration claims. Somerville also appeals from the Bankruptcy Court's denial of its alternative request for an order compelling the debtor to assume or reject its distribution contracts with Somerville. For the reasons that follow, the Bankruptcy Court's order is affirmed in part, vacated and remanded in part.

## BACKGROUND

In April, 1979, Pictures, Allied Artists Industries, Inc. and Allied Artists Television Corporation each filed a petition in the Bankruptcy Court seeking an arrangement under Chapter XI of the Bankruptcy Act of 1898. The Court permitted the petitioners to retain control of their businesses as debtors in possession. On March 14, 1980, the Bankruptcy Court entered an Order approving an agreement between the debtors and Lorimar Productions, Inc. ("Lorimar") which, inter alia, provided for the sale of substantially all of Pictures' assets to Lorimar. Half of the $4,500,000 purchase price was paid upon closing and the balance fell due on April 24, 1981.

One provision of the Bankruptcy Court's order authorized Pictures to assume its distribution contracts with independent movie producers and to assign those contracts to Lorimar. However, certain independent producers, appellants among them, objected to the assignment of their distribution agreements to Lorimar, contending that bankruptcy termination clauses in their contracts with Pictures left Pictures no distribution rights to assign. As a result, the Court expressly withheld authorization for Pictures to assign those contested contracts. Approximately one year later, after conducting independent negotiations and receiving consideration from Lorimar, appellants withdrew their objections to the assignment of their distribution contracts to Lorimar. The central question raised on appeal is whether, as appellants contend, Pictures assumed those contracts once appellants withdrew their objections, or if, as appellees maintain and the Bankruptcy Court ruled, no such assumption has taken place. Only if Pictures did, in fact, assume its distribution contracts with Filmtransac and Somerville are appellants entitled to have the monies owed them by Pictures under those contracts paid as priority administration claims.

### I

As the parties have framed it, the issue before the Court is whether the Bankruptcy Court's March 14, 1980 Order provided for the automatic assumption and assignment by Pictures of its distribution contracts with independent producers once the latter withdrew their objections, or if the Order contemplated further Court approval before Pictures could assume the previously contested contracts.[1] The text of the Order

---

1. Appellants also claim that assumption can be inferred from the acts of Pictures, regardless of

would appear to support the former conclusion. The third decretal paragraph, which withholds authorization to assign contested (Exhibit D) contracts, does authorize their assumption.

> ORDERED, that Industries, Pictures and Television are authorized to assume all distribution contracts with outside producers and participants granting distribution rights to Industries, Pictures or Television for motion pictures and all other contracts, leases or other agreements necessary to the carrying out of the transactions contemplated by the Lorimar Offer and to assign such contracts, leases or other agreements (except the contracts with respect to the films set forth on Exhibit D hereto) to Lorimar in accordance with the Lorimar Offer ...

Bankruptcy Court Order of March 14, 1980, Decretal ¶ 3, at p. 4. The sixth paragraph provides that these contracts can be assigned to Lorimar either by Court order or by the consent of the independent producers:

> ORDERED, that Lorimar is hereby directed to furnish the Creditors' Committees for Pictures, Industries and Television every sixty (60) days after the date of closing for a period of three (3) years a certification verified by an officer of Lorimar setting forth each motion picture on Exhibit D hereto the distribution contract with respect to which has been assigned to Lorimar during the preceding 60-day period either by consent of the third party claiming an interest or ownership in such motion or by court order ...

*Id.,* Decretal ¶ 6, at p. 6.

The only impediment to the assumption and assignment of Exhibit D contracts at the time of the March 14, 1980 Order was the independent producers' contention that those contracts had been terminated. That impediment could be removed either by a judicial determination of the contracts' validity or by the independent producers' withdrawal of their objections. The Order required only that Lorimar notify the Cred-

itors Committees of any assignment of a contract that resulted from such a court determination or withdrawal of objections. It did not require that Pictures again petition for permission to assume and assign the contract.

The March 14, 1980 Order was entered after a lengthy hearing during which the Court and counsel for the interested parties discussed the details of the Lorimar deal. A review of the transcript of that proceeding indicates that all parties understood that the assumption and assignment of the independent producers' distribution contracts would follow, as a matter of course, once the independent producers acknowledged, or the Court held, that those contracts had not been terminated and that they were, therefore, assignable. For example, counsel for the Pictures Creditors' Committee stated:

> Your Honor, there is no possibility of assuming an agreement which is in dispute until your Honor resolves the dispute ...
>
> Now that dispute has to be resolved. If it is resolved that they have no right of [termination], then, yes, we have assumed it and we have the burden of paying him the pre-petition, but we also can assign it.
>
> If the court says they are right, they have terminated it, our notification of assumption is meaningless because we have no right to assume....

Transcript of March 14, 1980 Hearing, at p. 68. Counsel for Lorimar stated:

> There are two concepts. From the concept of an outside producer, as your client, the assumption process has to do with the withdrawal of the objection process in one package.
>
> So that when our negotiations [with Filmtransac] are complete they [Pictures] assume the obligation and it is assigned to us, [you, Filmtransac] get the money that you are owed and we distribute Papillion [one of the Exhibit D films].

*Id.* at p. 67. Counsel for Pictures stated:

> The order provides that the order authorizes us to assume all distribution con-

---

what the Bankruptcy Court ordered. There is nothing in the record sufficient to support this

claim and the Bankruptcy Court properly rejected it.

tracts. As I understand it, unless learned counsel corrects my understanding of the law and there is a further step required beyond the authorization, we must then assume them.

It is our intention to give notice to all people of contracts at the moment we decide to assume them. We will not assume the contracts with respect to the films in dispute until those disputes are resolved and we are able to assign them to Lorimar.

If those disputes are resolved adversely to the debtor so that we are not able to assign them then we will never assume them.

*Id.,* at pp. 64–65.

Thus, it appears that on March 14, 1980, the Bankruptcy Court authorized Pictures to assume its distribution contracts with independent producers without further Court approval, once the challenges to the validity of those contracts were abandoned or rejected. This fact is not, however, in the Court's view, dispositive of the appeal. The Bankruptcy Court's authorization of the assumption and assignment of distribution contracts was integrally related to its approval of the sale of all of Pictures' assets to Lorimar. Lorimar was entitled to deduct a fixed sum from the purchase price it agreed to pay Pictures for each distribution contract Pictures was unable to assign to Lorimar. On March 14, 1980, therefore, it appeared to all concerned that Pictures (and its creditors) would benefit if Pictures were able to assume and assign its contracts with appellants, as this would lower the amount Lorimar could deduct from the purchase price. By the time appellants withdrew their objections, the situation had changed drastically. Lorimar has refused to pay any part of the $2,250,000 balance due on the purchase price of Pictures' assets, claiming credits and deductions for undelivered films, unmerchantable prints, etc., in excess of $2,600,000.[2] Where Pictures compelled

to assume appellants' contracts at this point, it would be burdened with a substantial administration expense,[3] to the detriment of all unsecured creditors, but would receive no corresponding benefit, as Lorimar is refusing all further payment. As the Court sees it, the question on appeal is whether the authorization to assume distribution contracts in furtherance of the sale of assets to Lorimar granted to Pictures in March, 1980, an authorization premised upon the fact that the assumption of appellants' contracts was, at that time, in the best interests of the debtor and its creditors, prohibited the Bankruptcy Court from disallowing a purported assumption of those contracts a year later, by which time the Lorimar deal was coming undone and the assumption of appellants' contracts would have been wholly inimical to the interests of most creditors. This question must be answered in the negative.

Appellants would construe the March 14, 1980 Order as affording them carte blanche, by providing a totally open-ended authorization empowering them to compel Pictures to assume their contracts at any time, even if the circumstances which prompted the original authorization to assume distribution contracts changed completely. Such a reading of the Order is unwarranted in light of the fact that the Bankruptcy Court could not have intended such a result, and unsupportable in light of the fundamental purposes behind the Bankruptcy Act. A central purpose of the Act is to ensure an equitable distribution of the debtor's assets among its creditors. The creation of a priority administration claim, which results from the assumption of an executory contract by the debtor, runs counter to this general purpose. *In re Lorber Industries of California, Inc.,* 675 F.2d 1062, 1065–66 (9th Cir.1982). To prevent the creation of such priorities when they are not beneficial to the debtor or its creditors, the Bankruptcy Court has the statuto-

---

**2.** The dispute between Pictures and Lorimar is now the subject of an adversary proceeding before the Bankruptcy Court.

**3.** The Bankruptcy Court estimated that the administration expense would be between $1 million and $2 million. Bankruptcy Court Order of March 3, 1983, 28 B.R. 196 at p. 200.

ry power to permit the rejection of executory contracts, 11 U.S.C. § 713(1) (1976), and the authority to review any purported assumption of such a contract. *See, Local Joint Executive Board, AFL–CIO v. Hotel Circle, Inc.,* 613 F.2d 210 (9th Cir.1980); *Texas Importing Co. v. Banco Popular de Puerto Rico,* 360 F.2d 582 (5th Cir.1966). Any reading of the March 14, 1980 Order which would prevent the Bankruptcy Court from exercising this supervisory function in a meaningful manner, and which would require the Court to create a priority administration claim manifestly prejudicial to the interests of all other creditors, is untenable.[4]

■ In sum, although the March 14, 1980 Order contemplated the assumption of appellants' distribution contracts and their assignment to Lorimar, once the obstacles to their assignment were removed, that Order did not deprive the Bankruptcy Court of the authority to prevent the debtor's estate from being saddled with a large administration expense as a result of a purported assumption under circumstances wholly different from those envisioned at the time the Order was entered. In light of the changed circumstances, appellants should have petitioned the Court for an order of affirmative assumption or rejection, *Texas Importing Co. v. Banco Popular de Puerto Rico, supra; In re Greenpoint Metallic Bed Co.,* 113 F.2d 881 (2d Cir.1940), rather than construing the limited authorization of the March 14, 1980 Order as empowering them to unilaterally impose the consequences of the assumption of their distribution contracts on the rest of Pictures' creditors. It was not error for the Bankruptcy Court to deny appellants' applications for priority administration claims.

## II

■ The films which are the subjects of the distribution contracts at issue in this appeal are presently in the possession of Lorimar. Appellants have maintained that Lorimar's right to the films flowed from Pictures' assumption and assignment to Lorimar of its distribution contracts with appellants. The Bankruptcy Court ruled, and this Court has affirmed, that Pictures did not assume those contracts and, as a result, it is unclear what authority Lorimar has to exploit appellants' films. Somerville sought to clarify the issue by requesting that the Bankruptcy Court order Pictures to assume or reject its contracts with Somerville if, as happened, the Court held that Pictures had not already assumed them.[5] If Pictures then assumed, the rights of all parties would be clear. If it rejected, Somerville maintains, Lorimar would have no right to the films because Pictures could not assign its distribution rights without first assuming them.

The Bankruptcy Court refused to direct Pictures to immediately assume or reject, holding that Somerville had transferred the films to Lorimar pursuant to an outside

---

4. It is noteworthy that the transcript of the March 14, 1980 hearing clearly reveals that the parties expected the Bankruptcy Court to have to decide the validity of the appellants' distribution contracts. Hopes for an outside settlement (at least with Somerville) were minimal. For example, counsel for Lorimar stated:

> Mr. Brecker [counsel for Pictures' Creditors' Committee] asked for an adjournment with an aim to work out some problems with people that cannot be worked out. So for me that's an illusory request.
>
> I think the more apt request from our standpoint that Mr. Aronson [Counsel for Pictures] immediately bring on litigation as to those pictures in an attempt to get your Honor to, I hope, rule that those rights can be transferred.

> I have no hopes to make a deal with Mr. Epstein [counsel for Somerville]. He is one of the ones that is joining in the request and there is really nothing that I know that we can do other than pay his client money that he would not get in this bankruptcy proceeding.

Transcript of March 14, 1980 Hearing, at p. 43. If the issue had, in fact, come before the Bankruptcy Court, there can be no doubt that the Court could have acted to prevent the assumption of those contracts if the circumstances had so warranted. The fact that the issue of the contracts' validity was mooted by appellants' withdrawal of their objections does not limit the Bankruptcy Court's power to oversee the assumption process.

5. Filmtransac requested no such relief.

agreement that is "presumably valid regardless of the assumption or rejection of the distribution agreements by the debtors." Bankruptcy Court Order of March 3, 1983, 28 B.R. 196 at p. 201. The rights of the parties remain ambiguous, however. It is not apparent how Somerville could have transferred Pictures' rights to Lorimar, nor is it clear how Pictures could have transferred the rights without assuming them. Somerville is left in an equivocal position regarding the status of its distribution rights and, as the Bankruptcy Court noted, the proper procedure for resolving such a difficulty is to petition the Bankruptcy Court for a declaration that the contracts are assumed or rejected. *Id.* at p. 200.

The determination of whether Pictures should assume or reject its distribution contracts with Somerville and the concomitant determination of exactly what rights Somerville, Lorimar and Pictures have in those contracts, can best be made in conjunction with the resolution of Pictures' dispute with Lorimar over the latter's refusal to make any additional payment toward the purchase of Pictures. Lorimar is entitled to deductions from the purchase price for any film Pictures is unable to assign to Lorimar. In order for the Bankruptcy Court to determine if such deductions are available to Lorimar with respect to Somerville's films, it must decide precisely what rights were transferred to Lorimar by its outside agreement with Somerville. Similarly, the propriety of assumption or rejection by Pictures may well turn upon the outcome of the Bankruptcy Court's adjudication of the dispute between Lorimar and Pictures. Accordingly, the Bankruptcy Court's order denying Somerville's petition for an order that Pictures be compelled to assume or reject its distribution contracts with Somerville is vacated and the case remanded to the Bankruptcy Court for consolidation with the adversary proceeding between Lorimar and Pictures.

IT IS SO ORDERED.