In re John H. SHUMATE, Debtor.

Richard STAIR, Jr., Trustee, Plaintiff,

v.

Mary Jo SHUMATE, Defendant.

Bankruptcy No. 3–83–00809.

Adv. No. 3–83–0919.

United States Bankruptcy Court,
E.D. Tennessee.

April 30, 1984.

Richard Stair, Jr., Knoxville, Tenn., for plaintiff.

Goddard & Gamble, Arthur B. Goddard, Carl P. McDonald, Maryville, Tenn., for defendant.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

At issue is the validity, extent and priority of a lien impressed by a state court order upon the debtor's interest in real estate for the purpose of securing the debtor's support obligations under a divorce decree.

### I

The debtor filed his voluntary petition for chapter 7 relief on May 19, 1983. On November 21, 1983, the trustee commenced this action to determine the validity, priority and extent of a lien claimed by the defendant. The parties submitted the matter for decision on the basis of stipulated facts.

The debtor and the defendant were husband and wife. On January 23, 1981, they were divorced in the Circuit Court for Blount County, Tennessee. The divorce decree provided for the payment of child support and alimony by the debtor. In addition, on August 31, 1981, the court ordered the sale of real estate owned by the debtor and the defendant as tenants in common,

consisting of a house and lot and an adjoining unimproved parcel. The court directed that the debtor receive one-third and the defendant receive two-thirds of the proceeds over and above encumbrances and expenses.

The state court of appeals subsequently modified the decree, and the circuit court entered an order on May 19, 1982, reflecting the appellate court's ruling. Pursuant to the modified decree, the debtor was to pay alimony of $45.00 per week in addition to the $50.00 per week in child support previously ordered. Further, the court postponed sale of the real estate until the parties' child reached eighteen years of age. The defendant retained the right to occupy the dwelling until that time. Finally, the debtor was to bear one-third of all costs of maintaining the real estate, including insurance and taxes. The defendant continued to be solely responsible for the mortgage payment.

Several months later the defendant filed a motion for contempt to secure payment of child support and alimony arrearages. On August 26, 1982, the circuit court entered an order adjudicating a child support arrearage of $530.00 and an alimony arrearage of $1,092.20, and granting an additional $2,000.00 in alimony. The court also impressed a lien upon the debtor's interest in the real estate to secure the payment of the judgment for child support and alimony arrearages, the additional alimony, "and all future child support and alimony." This order was recorded on the same day in the Register's Office for Blount County, Tennessee, the situs of the property.

The parties' child died on October 15, 1982. The total amount of child support due and unpaid at the date of the child's death was $880.00.

The defendant paid all insurance premiums relative to the property, including the debtor's portion of the obligation. The debtor's one-third share was $202.00 for premiums paid in 1981, 1982 and 1983 prior to the filing of the debtor's chapter 7 petition. The debtor's share of the 1983 premiums paid by the defendant after commencement of the bankruptcy was $48.00.

The defendant paid $200.00 for repairs on the property prior to the filing of the chapter 7 petition. After the filing of the petition the defendant paid an additional $484.25 for repairs.

In the original divorce decree the debtor was ordered to pay all of the property taxes for 1980; as indicated, he was also later ordered in the modified decree to pay one-third of the taxes for the years 1981 forward. However, the defendant paid all of the taxes for 1980, 1981 and 1982. The 1983 taxes ($257.92) remain unpaid. The parties stipulated that the debtor's portion of the total tax obligations is $964.46, including the debtor's portion of the 1983 taxes.

The parties stipulated that the defendant paid a $66.00 medical bill which the debtor was ordered to pay.[1] In addition, the parties stipulated the existence of outstanding debts in the amount of $292.62 for medical expenses relative to the child's final illness and $1,694.09 in expenses for the child's funeral.

The real estate has an appraised value of $64,000.00.[2] The outstanding balance owed on the first mortgage loan on the property was $8,252.91 as of January 19, 1984.

## II

The plaintiff trustee contends that the debtor's interest is encumbered only to the extent of the specific money judgment rendered on August 26, 1982, for child support

---

1. Presumably, this was pursuant to the provision in the original decree directing the debtor to pay "all debts existing at the time of the entry of this decree" since none of the various court orders specifically address this debt nor, in fact, make any specific provision regarding responsibility for the payment of the child's medical

expenses, other than to require the debtor to maintain hospitalization insurance for the child.

2. The court assumes that this stipulated figure was intended to encompass both the value of the house and lot and the adjoining unimproved parcel.

and alimony arrearages and the additional alimony.[3] The trustee argues that the state judgment lien statute, Tenn.Code Ann. § 25–5–101 (1980), affords a lien only to the extent that a judgment is final and conclusive in amount. Additionally, the trustee maintains that the circuit court had no statutory nor precedential basis for impressing a lien to secure the payment of alimony and child support *in futuro*. Further, says the trustee, even if a lien securing alimony and child support not reduced to a money judgment were valid, such a lien would only secure alimony and child support payments due before the filing of the debtor's chapter 7 petition. According to the trustee, any payments due after that time would have accrued after the trustee had acquired his rights to the property as a hypothetical lien creditor under 11 U.S.C.A. § 544(a) (1979).[4]

The defendant contends that the validity of the lien is not dependent on the judgment lien statute giving the recipient of a judgment a lien on all real property of the judgment debtor. Rather, the defendant maintains that the circuit court had the inherent authority to adjust the property interests of the husband and wife and to impress a lien upon specific real estate in order to make effective provision for the payment of alimony and child support. Arguing that the lien secured a continuing, nondischargeable obligation of the debtor even after the filing of the petition, the defendant asserts that her lien rights securing payments due after the filing of the petition were not terminated or superseded by the trustee's § 544(a) rights. The defendant also contends that the lien secured not only the debtor's obligations set forth in the divorce decree, but also the debtor's duty to pay or contribute to the child's final medical expenses and funeral expenses, both of which are items not specifically addressed in the divorce decree.

III

■ The validity of the lien impressed by the circuit court is without question. As the defendant correctly notes, this case concerns not the general judgment lien imposed by statute on all real property of the judgment debtor, Tenn.Code Ann. § 25–5–101 (1980), but rather it concerns the validity of a specific and express court-imposed lien on particular property to secure the performance of support obligations under the court's decree.

Current statutory law in Tennessee unquestionably permits the imposition of such a lien. Tenn.Code Ann. § 36–825 (Supp. 1983) provides:

(d) The court may impose a lien upon the marital real property assigned to a party, or upon his or her separate real property, or both, as security for the payment of spouse support or child support or payment pursuant to property division.

Tenn.Code Ann. § 36–825(d) (Supp.1983). The effective date of the amendment adding this provision was, however, September 1, 1983, a date subsequent to both the rendition of the divorce decree and the commencement of the debtor's bankruptcy. Yet it is unnecessary to apply this provision retrospectively to uphold the validity of this lien—the lien was validly imposed under the law in effect prior to this amendment and at the time of the circuit court's order.

The circuit court has concurrent jurisdiction with chancery courts to grant divorces. Tenn.Code Ann. § 16–10–108 (1980). In conjunction with that jurisdiction the Tennessee statutes provide:

(2) Courts having jurisdiction of the subject-matter and of the parties are hereby expressly authorized to provide for the future support of the complainant

---

3. Thus, the trustee would concede only that the debtor's interest is encumbered to the extent of the $3,622.20.

4. Under this analysis, the trustee would concede that the debtor's interest would be encumbered,

in addition to the $3,622.20 money judgment, to the extent of any child support and alimony payments coming due between the order entered August 26, 1982, and the date of the debtor's petition.

and of the children, in proper cases, by fixing some definite amount or amounts to be paid in monthly, semimonthly, or weekly installments, or otherwise, as circumstances may warrant, and such awards, if not paid, may be enforced *by any appropriate process* of the court having jurisdiction thereof, including levy of execution.

Tenn.Code Ann. § 36–820 (Supp.1983) (emphasis supplied).

"Process" has been defined as "a means whereby a court compels a compliance with its demands." *Black's Law Dictionary* 1370 (4th ed. 1951). Thus, the statute clearly empowers the court to employ appropriate means other than simply levy of execution to enforce compliance with its support orders.

Furthermore, the applicable statutory law also provides:

In such case, the court may decree to the spouse who is entitled to such alimony or child support *such part* of the other spouse's real and personal estate as it may think proper.

Tenn.Code Ann. § 36–821 (Supp.1983) (emphasis supplied).

The court has authority to award as alimony or child support all or any part of an ownership interest in real estate. Plainly implicit in authority to award the entire such ownership interest would also be the authority to award a security interest in such property.

Similarly, prior to the 1983 amendment discussed above, Tenn.Code Ann. § 36–825 (1977) provided:

In all actions for divorce or separate support and maintenance, the court having jurisdiction thereof may, in its discretion, adjust and adjudicate the respective rights and interests of the parties in all jointly owned property, so as to preserve for each or either party, that portion of such jointly owned property as may be just and reasonable under the facts and circumstances of the case, regardless of how the court may grant or refuse to grant relief in such case; and to this end the court shall be empowered to effectu-

ate its decree by divesting and reinvesting title to such property and, where deemed necessary, to order a sale of such property and to order the proceeds divided between the parties.

This statute "empowers the Court, upon dissolution of the marriage, to settle property rights upon equitable principles and ... should be broadly construed and liberally applied to accomplish its objective." *Kittrell v. Kittrell*, 56 Tenn.App. 584, 409 S.W.2d 179, 182 (1966) (enjoining defendant from encumbering or disposing of property interest until child attained majority and the parties' respective equities in property could be adjusted in accordance with a determination of defendant's fair share of child's support).

The Tennessee courts have recognized the validity of impressing a lien to secure and enforce support obligations under a divorce decree. In *Chunn v. Chunn*, 19 Tenn. 131 (1838), for example, the court acknowledged the practice, in decreeing alimony from a husband to a wife, of allotting "a certain portion of his income for her support, the payment of which may be secured by being charged upon his estate." *Chunn*, 19 Tenn. at 134.

More recently, in *Ligon v. Ligon*, 556 S.W.2d 763 (Tenn.Ct.App.1977) the court secured performance of a decree for periodic alimony and child support by declaring a lien against real estate and stock owned by the defendant. Upon providing for the support award, the court observed:

The next problem for solution is that of security for the payment of alimony and support and performance of other provisions of the decree. Because of the varied business interests of defendant, he seems to have a credible reason why none of his assets should be encumbered. This, however, is not a valid reason why his wife and children should not be assured of his support. This is especially true because of his behavior in respect to support after his departure from the home.

Nevertheless, it is considered that defendant, himself, should select the properties, funds, or other means of security ... sufficient ... to provide income equal to ... the aggregate of periodic alimony, child support and installments of alimony in solido ....

Until defendant provides such fund or other security satisfactory to the Trial Judge, a lien should be declared against the farm and capital stock ... to assure performance of the decree.

*Ligon*, 556 S.W.2d at 768.

Clearly, the court's rationale would justify equally, if not more so, the declaration of such a lien where no alternative form of security was available.

Having determined the validity of the lien, this court must yet decide the extent and priority of the lien. The initial question is precisely which prepetition support obligations of the debtor were secured by the lien. Indisputably, the lien secured the monetary judgment rendered on August 26, 1982, consisting of $530.00 past-due child support, $1,092.20 past-due alimony and $2,000.00 additional alimony. Under *Ligon* and the other authorities analyzed above the lien also secured obligations specifically termed alimony and child support payments in the amount of $2,060.00 maturing between August 26, 1982, and the filing of the debtor's petition.[5]

In addition, the lien secured all of the debtor's obligations under the divorce decree not specifically designated child support and alimony but which were nonetheless in the nature of support and mainte-

nance. Thus, the lien secured the $66.00 medical bill which the parties stipulated the debtor was ordered to pay; the lien also secured the debtor's obligation to pay his designated share of the prepetition cost of insurance premiums, property taxes, and repair expenditures associated with the house.[6]

The language of the court order impressing the lien does not explicitly name any of these obligations.[7] However, the language must be interpreted in light of the entire order. In any search for the meaning of an instrument, its terms are to be interpreted and their legal effect determined by consideration of the instrument as a whole. *Hill & Range Songs v. Fred Rose Music*, 570 F.2d 554 (6th Cir.1978).

Included in the order is a finding of the debtor's "willful contempt" of the court in "that he has failed to pay his proportionate share of the insurance and taxes as ordered by this Honorable Court ...." Despite this finding, the court made no finding of the dollar amount of the proportionate share and awarded no specific monetary judgment for the debtor's default regarding insurance and tax payments. Under fundamental principles of construction, when ascertaining the intent of an instrument, the court should construe the instrument as a whole, giving effect to every part of the instrument. *Shell Oil Co. v. Prescott*, 398 F.2d 592 (6th Cir.1968), *cert. denied*, 393 U.S. 1017, 89 S.Ct. 621, 21 L.Ed.2d 562 (1969). An interpretation giving meaning and effect to every provision is favored over one leaving a portion of the

---

5. This amount includes $350.00 in child support payments due between August 26, 1982, and the date of the child's death on October 15, 1982; in addition, it includes $1,710.00 in alimony payments due from August 26, 1982, until the filing of the petition on May 19, 1983.

6. This would include $202.00 in insurance premiums, $66.00 in repair expenditures, and at least $878.49, reflecting the debtor's share of property taxes for 1980, 1981, and 1982. The parties stipulated that the 1983 property taxes, in the amount of $257.92, remain unpaid. The parties did not, however, indicate whether the 1983 taxes were due before or after May 19, 1983, the date of the filing of the debtor's peti-

tion. Thus, this court makes no finding and conclusion as to whether the lien secured this particular portion of the debtor's tax obligations.

7. The pertinent paragraph provides:
   The Court hereby impresses a lien upon the interest of the Plaintiff in and to the following described real estate to secure the payment of the judgment for child support in the amount of $530.00, alimony in the amount of $1,092.20, and additional alimony in the amount of $2,000.00 and all future child support and alimony.

instrument useless or inexplicable. Nothing should be rejected as surplusage if the court can discover from the whole instrument any reasonable purpose for the words. 17 Am.Jur.2d *Contracts* § 259 (1964).

The circuit court unequivocally found the debtor in contempt for failing to pay his proportionate share of the insurance and taxes. Clearly, the circuit court intended the debtor to be responsible for his portion of these expenses. These provisions were not ineffectual surplusage. The circuit court's intention, as expressed by the order in its entirety, was to enforce the debtor's duty to honor his support obligations under the divorce decree. The court could not have intended to hold the debtor in contempt specifically for failing to pay his share of insurance and taxes and yet have intended to utterly fail to take any steps whatsoever to enforce compliance. To conclude otherwise would be to render explicit provisions of the order meaningless.

■■■ A bankruptcy court exercises the powers of a court of equity, 28 U.S.C.A. § 1481 (Supp.1983), and equitable principles govern the exercise of its jurisdiction. *Fanelli v. Hensley (In re Triangle Chemicals)*, 697 F.2d 1280 (5th Cir.1983). The bankruptcy court, as a court of equity, may disregard the form of a transaction and give effect to its substance. *In re Comtek Electronics*, 28 B.R. 829 (Bkrtcy.S.D.N.Y. 1983). In cases of ambiguity, resort to the equitable powers of the bankruptcy court is appropriate. *In re Miracle Mart*, 396 F.2d 62 (2nd Cir.1968); *In re Allied Artists Industries*, 28 B.R. 196 (Bkrtcy.S.D.N.Y. 1983). This court is guided by the principle enunciated in the maxim, *animus hominis est anima scripti* —the writer's intention is the soul of the writing. A liberal interpretation is given to all writings in order to ascertain and give effect to the intention of the makers of the instrument. Gibson, H. and Inman, W., *Gibson's Suits In Chancery* § 39 (6th ed. 1982).

The circuit court's order is ambiguous. It finds contempt, and yet it fails to make provision for compliance. Under these circumstances, the court must be guided by the intention of the circuit court order, apparent from considering the order in its entirety. The intent of that order was to require and secure the debtor's performance of all of his support obligations specified by the terms of the divorce decree.

An additional consideration supports the conclusion that the court-imposed lien secured the debtor's obligations to pay the medical bill and to pay his designated share of the insurance, tax, and repair expenses associated with the house. The court order specifies that the lien secures "all future child support and alimony." Clearly, payments and obligations not actually designated as alimony and child support may be found to be essentially in the nature of alimony and child support. The question arises, for example, in the context of determining dischargeability of a debt under 11 U.S.C.A. § 523(a)(5) (1979). In *Soderholm v. Soderholm (In re Soderholm)*, 33 B.R. 83 (Bkrtcy.D.Conn.1983) the court found to be in the nature of maintenance and support the debtor's obligation to pay a judgment encumbering the family residence. The court noted that debts payable to third persons can constitute maintenance and support obligations. The crucial issue is the function the obligation was intended to serve. *Soderholm*, 33 B.R. at 84. The court said:

It is apparent from the evidence adduced at trial that the parties intended the plaintiff and their three teenage children to live in the family residence; that the bank's judgment lien was a potential threat to such continued use; and that the plaintiff's income, supplemented by the defendant's periodic, unallocated alimony and child support obligations, was not likely to provide sufficient funds to satisfy the bank's judgment. I am accordingly persuaded that the function of the defendant's obligation under the state court decree was to furnish support for the plaintiff by relieving her of the burden of satisfying the bank's judgment in order to save her home.

The same result is reached by considering the defendant's obligation in the context of the child maintenance and support provisions of Code section 523(a)(5). As noted, it was the parties' principal objective to maintain the family home for their children. In that sense, the defendant agreed with the plaintiff that he would pay the entire bank debt so that the bank would not institute foreclosure proceedings which might terminate the children's use of the premises. Thus it would appear that the defendant intended to provide for the maintenance and support of his children and that his agreement to pay the bank debt was intended to accomplish that purpose.

*Soderholm*, 33 B.R. at 84–85.

*See also Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103 (6th Cir.1983) (in determining whether assumption of joint debts per separation agreement is in nature of alimony, maintenance, or support, court must inquire whether parties intended to create obligation to provide support through assumption of debt, whether such assumption had effect of ensuring daily needs of spouse and children, and whether amount of support represented by assumption was not excessive under traditional concepts of support).

Although dischargeability of the debt is not here in issue, a similar analysis may be appropriately employed to analyze the bounds of the circuit court order's language securing "all future child support and alimony." Plainly, the debtor's obligations regarding the medical bill and regarding insurance, taxes and other maintenance associated with the house were essentially in the nature of maintenance and support and may be deemed to come within the parameters of the circuit court's language.

Furthermore, considerations of equity compel this court to conclude that the lien secured the debtor's obligation to contribute to the medical and funeral expenses relative to the child's final illness and death. The provisions of the divorce decree admittedly did not allocate nor even address the parties' respective responsibilities for such expenditures for the child. However, the initial decree required the debtor to ensure coverage of the child under the debtor's hospitalization insurance policy. Clearly, the decree envisioned some degree of responsibility on the debtor's part for the health care of the child.

More importantly, the mere provision in the divorce decree for alimony and child support in no way operated to relieve the debtor's obligation to defray the cost of extraordinary services rendered to the child. In *Merrill v. Merrill*, 188 Tenn. 10, 216 S.W.2d 705 (1948) the court held that the defendant husband, who had previously been ordered to pay specified child support payments, was nonetheless also liable to the wife for emergency medical expenses incurred for the children. Similarly, in *Rose Funeral Home v. Julian*, 176 Tenn. 534, 144 S.W.2d 755 (1940) the court held that the funeral expenses incidental to the burial of a minor child were a necessity for which the parents were equally and jointly liable. Thus, despite a divorce decree already providing for specified child support payments by the father, the court equitably apportioned the funeral expenses between the parties, requiring the father to bear one-third of the costs.

The debtor's joint responsibility with the defendant for the child's medical and funeral expenses is unquestionable. Tenn.Code Ann. § 34–101 (1977). Applying equitable considerations pursuant to the above authorities, this court concludes that one-half of the medical and funeral expenses may be properly apportioned to the debtor. The manifest intention of the divorce decree was to secure the debtor's performance of his obligation to support the child. The debtor's obligation to support the child included not only obligations specifically imposed by the divorce decree but also his liability for such necessities as are exemplified by these medical and funeral expenditures. Thus, this court concludes that the lien also secured payment of the debtor's equitable share of these expenses in the amount of $993.36.

In summary, the defendant holds a valid lien in the amount of $7,888.71 upon the debtor's interest in the real property. The amount secured by the lien represents the debtor's support obligations which accrued prior to the filing of his bankruptcy petition: (1) the August 26, 1982, judgment for $530.00 child support arrearage, $1,092.20 for alimony arrearage, and $2,000.00 additional alimony; (2) the $66.00 medical bill; (3) the $202.00 in insurance premiums, $66.66 in repair expenditures, and $878.49 in property taxes, representing the debtor's designated share of prepetition home maintenance; (4) the $2,060.00 in alimony and child support payments accruing from August 26, 1982, until the filing of the debtor's petition; and (5) the $993.36 representing the debtor's one-half share of the child's final medical and funeral expenses.

Finally, as previously indicated, the parties dispute the effect the trustee's rights under 11 U.S.C.A. § 544(a) (1979) upon the defendant's lien rights as to support obligations of the debtor coming due after commencement of the bankruptcy case. The court reserves decision on this question pending submission by the parties of additional briefs.

In accordance with Bankruptcy Rule 7052, this Memorandum constitutes findings of fact and conclusions of law.