PER CURIAM:
In this Chapter 11 bankruptcy reorganization, the appellants, bank creditors of the debtor in possession, Richmond Leasing Company (RLC), challenge the district court’s affirmance of the bankruptcy court’s approval of RLC’s decision to assume an amended lease under § 365 of the Bankruptcy Code.[1] We conclude that the district court did not err in approving the assumption of the lease as a valid business judgment of the debtor, and thus we affirm.
The debtor in possession, RLC, is in the business of leasing railroad cars. It is a wholly-owned subsidiary of Richmond Tank Car (RTC), which manufactures railroad cars. The lease that forms the subject matter of this appeal is part of a larger transaction in which RLC and its parent corporation, RTC, both played a part. RTC manufactured and sold 402 railroad cars to General Electric Credit Corporation (GECC). GECC in turn leased the railroad *1307 cars back to RTC’s subsidiary, RLC, for a twenty-year term. Under the lease agreement between GECC and RLC, dated June 1, 1982, RLC agreed to pay GECC approximately $1.8 million every six months, beginning on June 30, 1983. RLC also granted GECC a security interest in RLC’s subleases of the cars to third parties. There was some suggestion at the hearing that GECC may have paid RTC a premium price for the ears and RLC may in turn have leased them from GECC at a premium. The 402 cars covered by the lease make up less than ten percent of RLC’s inventory.
On January 7, 1983, before the first payment was due under this lease, RLC filed its petition in bankruptcy. In April 1983, RLC and GECC offered for court approval a renegotiated lease that RLC proposed to assume. Under the amended lease, GECC agreed to waive existing defaults in the lease[2] and to reduce the rent due under the lease through 1986 to quarterly payments of $500,000 or 85% of the gross quarterly revenues generated by the 402 cars, whichever was less; however, the quarterly payments were not to average less than $400,000 for two consecutive quarters. From 1986 through 2002, the quarterly payments were to increase to $937,500. In exchange, RTC agreed to issue preferred stock to GECC periodically, and GECC placed restrictions upon RTC’s ability to encumber its property, buy stock, make loans, guarantee obligations, dilute its stock, dispose of its fixed assets at less than fair market value, lease property, merge with or be purchased by another company, or dispose of its receivables out of the ordinary course of business, without GECC’s consent. The amended lease designates RTC’s violation of these restrictions as an event of default. RTC’s bankruptcy is an event of default under both the original and the amended leases.
After a hearing, the bankruptcy court approved the joint application of RLC and GECC for authority to amend and assume the lease. The court’s order provided that the automatic stay imposed by 11 U.S.C. § 362 would be lifted automatically in the event of RLC’s default, after GECC notified the court and all parties in interest. On appeal from the bankruptcy court, the district court affirmed the bankruptcy court’s approval of the assumption of the lease.
The bank creditors raise several points in their appeal to this Court. We shall consider those points in turn.

The Standard of Review

The bank creditors argue that the district court improperly applied a “clearly erroneous” standard in its review of the bankruptcy court’s findings of ultimate facts and conclusions of law. Specifically, the bank creditors maintain that the district court reviewed under the clearly erroneous standard the bankruptcy court’s decisions regarding the correctness of RLC’s business judgment in assuming the amended lease, whether RLC had provided adequate assurance of performance, whether the amended lease implemented a sub rosa reorganization, and whether the assumption of the lease with some amendment favorable to GECC complied with § 365. We have examined the district court’s memorandum and order carefully, and we disagree. It is quite clear that the district court applied the appropriate de novo standard of review to the legal questions whether the amended lease implemented a sub rosa reorganization and whether the assumption of the amended lease complied with the standards set forth in § 365.
Moreover, assuming that the district court applied a “clearly erroneous” standard when it reviewed the bankruptcy court’s decisions on business judgment and *1308 adequate assurance,[3] we conclude that the disputes involving those issues centered on contested facts.[4] No one denies that if RLC can generate sufficient income from GECC’s cars and from its unencumbered assets to meet the payments on the amended lease, then the lease represents a valid exercise of RLC's business judgment and RLC has offered adequate assurance of performance. The various financial experts and company officers who testified at the hearing on the application to assume the lease differed in the inferences they drew from RLC’s accounting data, upon the accuracy of which all agreed.
Were we entirely without guidance on the application of the “clearly erroneous” standard in this situation, we would adopt that standard in deference to the bankruptcy court’s experience and expertise in resolving disputes between financial expert witnesses. In deciding this issue, however, we also have the benefit of the Supreme Court’s decision in Anderson v. City of Bessemer City, — U.S.-,-, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985), holding that an appellate court must review a finding of fact under the “clearly erroneous” standard of Rule 52(a) of the Federal Rules of Civil Procedure,[5] even when the lower court’s findings of fact “do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts.” — U.S. at-, 105 S.Ct. at 1512 (emphasis added). The Court explained:
The rationale for deference to the original finder of fact is not limited to the superiority of the trial judge's position to make determinations of credibility. The trial judge’s major role is the determination of fact, and with experience in fulfilling that role comes expertise. Duplication of the trial judge’s efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources. In addition, the parties to a case on appeal have already been forced to concentrate their energies and resources on persuading the trial judge that their account of the facts is the correct one; requiring them to persuade three more judges at the appellate level is requiring too much.
Id.[6]
Rule 8013 of the Bankruptcy Rules, which we apply here, mandates the application of the “clearly erroneous” standard of review to the bankruptcy court’s findings of fact. Its language tracks that of Rule 52(a) of the Federal Rules of Civil Procedure almost verbatim. The Anderson reasoning is thus equally compelling in this case.

RLC’s Exercise of Business Judgment and Adequate Assurance of Future Performance

The bank creditors invite us to overturn the district court’s holding that the bankruptcy court did not clearly err when it found that RLC’s assumption of the amended lease was a proper exercise of its business judgment. The bank creditors urge us to hold that the business judgment question, as a mixed question of law and fact, is subject to de novo review. We have noted above that the decision whether *1309 assumption of the lease represented a proper exercise of business judgment depended entirely upon resolution of a factual dispute as to whether RLC could generate sufficient revenues in the future to cover its obligations under the lease. The parties did not dispute the legal standard to be applied in § 365 cases, nor could they. It is well established that “the question whether a lease should be rejected ... is one of business judgment.” Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co., 318 U.S. 523, 550, 63 S.Ct. 727, 742, 87 L.Ed. 959 (1943). See also Matter of Minges, 602 F.2d 38, 42-43 (2d Cir.1979). “As long as assumption of a lease appears to enhance a debtor’s estate, court approval of a debtor-in-possession’s decision to assume the lease should only be withheld if the debtor’s judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code____” Allied Technology, Inc. v. R.B. Brunemann & Sons, 25 B.R. 484, 495 (Bankr.S.D.Ohio 1982).
The parties did not dispute whether doubts about RLC’s financial stability had achieved a critical mass sufficient to render RLC’s assuming the lease an improper exercise of business judgment; instead they disputed whether the doubts about RLC’s financial status were justified. Thus this issue is properly considered under the “clearly erroneous” standard of review. The bankruptcy court heard extensive testimony on direct examination and cross-examination of financial experts and company officers. It was called upon to determine whether a projection of future income based on RLC’s revenues was more accurate than one based on cash flows, whether certain types of income were sufficiently assured to be considered as available to pay RLC’s lease obligations, whether an incipient upward turn in the railroad car leasing business was likely to continue in the long term, and whether the administrative claim that might result from RLC’s default on the amended lease would be so large that possible prejudice to RLC’s unsecured creditors mandated a more cautious business approach than that taken in assuming the lease. The bankruptcy court’s findings reflect its decisions on these disputed factual matters. It did not clearly err.
Similarly, the parties do not dispute that 11 U.S.C. § 365(b)(1)(C) requires a debtor in possession[7] to provide adequate assurance of future performance when it assumes a lease. Nor do they dispute the legal standard for determining adequate assurance. In In Re Sapolin Paints, Inc., 5 B.R. 412, 420-21 (Bankr.E.D.N.Y.1980), the court traced the phrase “adequate assurance” as it is used in § 365 to the “adequate assurance” defined in § 2-609(1) of the Uniform Commercial Code:
The terms “adequate assurance of future performance” are not words of art; the legislative history of the Code shows that they were intended to be given a practical, pragmatic construction.
The phrase first appears in the legislation proposed by the Commission on Bankruptcy Laws. ...
The Commission Report explains the language “adequate assurance of future performance” as follows:
“The language ‘is adopted from Uniform Commercial Code § 2-609(1).’ What constitutes ‘reasonable time thereafter’ for curing defaults or an ‘adequate assurance of future performance’ must be determined by consideration of the facts of the proposed assumption. Cf. Official Comment 4 to Uniform Commercial Code § 2-609 (1972 Edition). It is not intended, however, that any non-debtor party should acquire greater rights in a ease under the act than he has outside the act.” Report of the Commission on Bankruptcy Laws of the United States, H.R. Doc. No. 93-137, 93d Cong., 1st Sess. Pt. II 156-57 (1973).
*1310 Section 2-609 of the Uniform Commercial Code, from which the bankruptcy statute borrows its critical language, provides that “when reasonable grounds for insecurity arise with respect to the performance of either party, the other may in writing demand adequate assurance of future performance .... ” The Commentaries to the Code note that “ ‘adequate’ assurance is to be ‘defined by commercial rather than legal standards.’ ” Official Comment 3 To Uniform Commercial Code § 2-609 (1972 Ed.). What constitutes “adequate assurance” is to be determined by factual conditions; the seller must exercise good faith and observe commercial standards; his satisfaction must be based upon reason and must not be arbitrary or capricious.
Courts have consistently determined whether a debtor offered adequate assurance of future performance by considering whether the debtor’s financial data indicated its ability to generate an income stream sufficient to meet its obligations, the general economic outlook in the debt- or’s industry, and the presence of a guarantee. See, e.g., Seacoast Products, Inc. v. Spring Valley Farms, 34 B.R. 379, 381 (Bankr.M.D.N.C.1983); In re Berkshire Chemical Haulers, Inc., 20 B.R. 454, 458-59 (Bankr.Mass.1982); In re Lafayette Radio Electronics Corp., 9 B.R. 993, 1000 (Bankr.E.D.N.Y.1981). The bankruptcy court considered just such factual matters in this case.
The bank creditors contend that the bankruptcy court erred when it credited the testimony of RLC’s witnesses projecting RLC’s future profitability rather than the testimony of the bank creditors’ witnesses. That dispute is essentially factual and is subject to review under the “clearly erroneous” standard. We affirm the district court’s holding that the bankruptcy court did not clearly err when it made this determination.

RLC’s' Granting GECC Greater Rights Under the Amended Lease

The bank group contends that the bankruptcy court erred when it approved RLC’s assumption of the amended lease on the ground that § 365 of the Bankruptcy Code requires that the debtor grant the creditor no greater rights under the amended lease than under the original lease. This argument misconstrues the requirements of § 365.
We first observe that the amended lease significantly reduces RLC’s short-term obligations to GECC. In exchange for this concession, GECC receives additional benefits under the amended lease largely from RLC’s parent corporation, RTC, in the form of stock and increased control over the way RTC conducts its business. The consideration flowing from RTC to GECC cannot affect any interest of the bank creditors that RLC’s bankruptcy proceeding protects.[8] Under the amended agreement, RLC provides GECC additional consideration only in the sense that it agrees that RTC’s default on its new obligations to GECC will permit GECC to terminate the agreement and repossess its cars from RLC.
Section 365 is intended to provide a means whereby a debtor can force another party to an executory contract to continue to perform under the contract if (1) the debtor can provide adequate assurance that it, too, will continue to perform, and if (2) the debtor can cure any defaults in its past performance. The provision provides a means whereby a debtor can force others to continue to do business with it when the bankruptcy filing might otherwise make them reluctant to do so. The section thus serves the purpose of making the debtor’s rehabilitation more likely.
In this context, it becomes clear that in the typical case under § 365, if *1311 anyone objects to the debtor’s assumption of the contract it will be the other party to the executory contract, not the debtor’s creditors who are strangers to the transaction. Thus, the often-repeated statement that the debtor must accept the contract as a whole means only that the debtor cannot choose to accept the benefits of the contract and reject its burdens to the detriment of the other party to the agreement. See In re Holland Enterprises, Inc., 25 B.R. 301 (Bankr.E.D.N.C.1982); In re LHD Realty Corp., 20 B.R. 717 (Bankr.S.D.Ind.1982). Similarly, the other party cannot hold out for concessions from the debtor beyond those required to provide adequate assurance. See In re Lafayette Radio Electronics Corp., 9 B.R. 993, 998 (E.D.N.Y.1981). We conclude that RLC’s recognizing an event of default in RTC’s failure to perform the new covenants, which were included in the amended lease in order to assure GECC that RTC would perform its guarantee, is part of RLC’s offer of adequate assurance of future performance to GECC. See In re Kennesaw Dairy Queen Brazier, 28 B.R. 535, 536 (N.D.Ga.1983) (stating, “The fact that debtors may cure defaults and reinstate contracts or leases also is perhaps the clearest example of the modification of an executory contract or unexpired lease.”).
Moreover, to the extent that the amended lease represents a true renegotiation of the obligations of RLC, RTC and GECC, it falls entirely outside of § 365’s concern. 11 U.S.C. §§ 1107 and 1108, taken together, authorize a debtor in possession to operate the business of the debtor. Nothing in the Code suggests that the debtor may not modify its contracts when all parties to the contract consent. Although § 1107 provides that a court may limit the debtor’s exercise of the rights of the trustee, including the § 1108 right to operate the business, in the absence of special circumstances or a specific Code provision, we see no reason to require the debtor to do more than justify its actions under the “business judgment” standard if creditors object.[9] More exacting scrutiny would slow the administration of the debt- or’s estate and increase its cost, interfere with the Bankruptcy Code’s provision for private control of administration of the estate, and threaten the court’s ability to control a case impartially. See In re Airlift International, Inc., 18 B.R. 787, 789 (Bankr.S.D.Fla.1982); In re Curlew Valley Assocs., 14 B.R. 506, 509-514 (Bankr.D.Utah 1981).[10] This business judgment *1312 standard[11] thus does not differ from the business judgment inquiry already undertaken and resolved in favor of the amended lease under § 365.[12] Accordingly, the bankruptcy court did not err in approving the lease as amended, and we affirm the district court’s order on this point.

Lease as a Sub Rosa Plan of Reorganization

The bank creditors contend that the amended lease goes beyond what is permissible in the assumption of a lease and establishes, sub rosa, a plan of reorganization, allowing GECC and RLC to circumvent the plan confirmation requirements of Chapter 11. The bank creditors complain that the lease does not expressly restrict payment due under the amended lease to the revenues generated by the GECC rail cars; the order approving the lease provides for the automatic lifting of the § 362 stay if there is a default; in the event of default, the lease permits GECC to assert a large administrative claim that would affect the proportion of assets that could be allocated to other creditors under a plan of reorganization; and the amended lease restricts RTC’s actions and names as an event of default RTC’s filing for bankruptcy, so that, in the event of RTC’s bankruptcy, a consolidation with RLC’s case would be more difficult.
We do not doubt that a debtor can assume a lease under its original, prebankruptcy terms without creating a sub rosa plan of reorganization, so long as such an assumption is a valid exercise of a debtor’s business judgment. Thus, we need not greatly concern ourselves with the alleged debilitating effects of GECC’s rights, under the amended lease, to look to sources other than revenues from the GECC cars for payment, to assert a large administrative claim in the event of default,[13] or to consider RTC’s bankruptcy as *1313 an event of default; the original lease afforded GECC all those advantages, and the bankruptcy court determined that they do not render assumption of the amended lease an improper business decision. The lifting of the automatic stay and the restrictions on RTC’s actions, even were we to combine them with the advantages under the original lease, do not alter creditors’ rights, dispose of assets, and release claims to the extent proposed in the wide-ranging transaction disapproved in In re Braniff Airways, Inc., 700 F.2d 935 (5th Cir.1983). Although the disposition of a “crown jewel” asset might, in combination with other factors, severely restrict a future reorganization plan so as to amount to a sub rosa plan of reorganization even though all or substantially all of the debt- or’s assets were not involved in the transaction, that is not the case here. We will not make a mountain out of the molehill of restrictions included in the amended lease.

Lifting of Automatic Stay in the Event of Default

The bank creditors contend that the bankruptcy court erred in conditionally lifting the automatic stay in the event of default without a showing of adequate cause. 11 U.S.C. § 362(d)(2) permits the court to lift the automatic stay, after notice and a hearing, if the debtor does not have an equity in the property that the movant seeks to recover and the property is not necessary to an effective organization. The order lifting the automatic stay was part and parcel of the amended lease transaction here, and the parties offered testimony concerning its effect at the hearing on the application to assume the lease. Although the bankruptcy court did not make findings of fact with respect to the requirements of 11 U.S.C. § 362(d)(2), it did order the lifting of the automatic stay “[p]ursuant to the Joint Application.” When a court has not entered findings of fact in accordance with Rule 52(a) of the Federal Rules of Civil Procedure, the appellate court ordinarily vacates the judgment and remands the case for appropriate findings. Remand is unnecessary, however, if “all the facts relied upon to support the judgment are in the record and are undisputed, or if the record as a whole presents no genuine issue as to any material fact.” Armstrong v. Collier, 536 F.2d 72 (5th Cir.1976) (quoting King v. Commissioner of Internal Revenue, 458 F.2d 245, 249 (6th Cir.1972)). It is undisputed that RLC has no equity in GECC’s cars. Under § 362(g), the party opposing the lifting of the stay bears the burden of proof on all issues other than the issue of the debtor’s equity in the property. There is no evidence on record to suggest that GECC’s railroad cars, which make up less than ten percent of RLC’s inventory, are necessary to an effective reorganization of RLC. Therefore, the bankruptcy judge did not err in lifting the automatic stay.[14]
Because we have found no error in the district court’s decision in this case, its order is
AFFIRMED.

. 11 U.S.C. § 365.

. The district court correctly held that RLC was not in default of its obligations under the lease, since no payment was yet due. RLC’s filing for bankruptcy was an event of default under the lease, but under the provisions of 11 U.S.C. § 365(b)(2), that default would have had no effect in bankruptcy. However, RLC's bankruptcy would have triggered RTC’s obligations as a guarantor of the June 1982 lease, so the waiver of defaults represented some consideration flowing from GECC to RTC.

. We do not doubt that the district court regarded the bankruptcy court’s decision as sustainable under either a "clearly erroneous" or de novo standard of review. The district court held that the evidence taken during the hearing "amply support[ed]" the bankruptcy judge's findings.

. We might reach a different result had we concluded that "an error of law [had] impaired the judgment of the trial court on a mixed question of law or fact....” 9 C.A. Wright & A. Miller, Federal Practice and Procedure § 2589 at 755 (1971).

. "[A] finding is ‘clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.” Anderson, — U.S. at -, 105 S.Ct. at 1511 (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed.2d 746 (1948)).

. The Court's reasoning in Anderson parallels that found in 9 C.A. Wright & A. Miller, Federal Practice and Procedure § 2587 at 747-749 (1971).

. A debtor in possession enjoys the powers of a trustee under 11 U.S.C. § 1107, except those withheld by 11 U.S.C. § 1106.

. The bank creditors contend that RTC, to which they have also lent money, is itself in default of its obligations to them and may file for bankruptcy in the future. If the bank creditors want court supervision of RTC’s activities, they can commence an involuntary bankruptcy case against RTC if the requirements of 11 U.S.C. § 303 are met.

. 11 U.S.C. § 1104 permits the appointment of a trustee, of course, in the event of debtor misconduct.

. Although the Curlew case suggests that a debtor-in-possession’s decisions should be subject to greater supervision by the bankruptcy court than a trustee’s, 14 Bankr. at 509-511, we see no reason to invoke in the ordinary case the greater supervision permitted by 11 U.S.C. § 1107. Our view is consonant with the House and Senate Reports on § 1107(a), which state that:
This section places a debtor in possession in the shoes of a trustee in every way. The debtor is given the rights and powers of a chapter 11 trustee. He is required to perform the functions and duties of a chapter 11 trustee (except the investigative duties). He is also subject to any limitations on a chapter 11 trustee, and to such other limitations and conditions as the court prescribes.
H.R.REP. No. 595, 95th Cong., 1st Sess. 404 (1977), reprinted in 1978 U.S.CODE CONG. & AD.NEWS 5787, 5963, 6360; S.REP. No. 989, 95th Cong., 2d Sess. 116 (1978), reprinted in 1978 U.S.CODE CONG. & AD.NEWS 5787, 5902 (citation omitted).
11 U.S.C. § 363(c) permits a trustee operating the debtor’s business to sell property of the estate in the ordinary course of business without notice or court approval. Even assuming that a lease agreement increasing the debtor’s inventory by less than ten percent represents a transaction not in the ordinary course of the debtor’s business, 11 U.S.C. § 363(b) authorizes the debtor to sell or exchange property of the estate (i.e., its right to receive rentals from subleases of the cars it holds under the original lease agreement) with court approval. Even for a sale of all the debtor’s assets, a considerably more radical action that the modification of a lease, those courts that have permitted such a sale under § 363(b) read the section as requiring only that the bankruptcy court consider whether there is an emergency, whether other buyers have been solicited, and whether the sale is in the best interests of the estate. In re Ancor Exploration Co., 30 B.R. 802, 808 (Bankr.N.D. Okia.1983). See also In re Charlesbank Laundry Co., 37 B.R. 20, 22 (Bankr.Mass.1983). The question whether a sale of all assets may be *1312 approved under § 363(b) of course remains open in this Circuit. See In re Braniff Airways, Inc., 700 F.2d 935, 939 (5th Cir.1983).

. Matter of Southern Biotech, Inc., 37 B.R. 318 (Bankr.M.D.Fla.1983), adopts an "economic soundness" standard for the approval of a trustee’s proposal to purchase assets, other than in the ordinary course of business, in order to continue to operate the debtor’s business. That proposed transaction resembles the debtor’s offer here to lease assets in order to maintain its pre-bankruptcy level of inventory, although we are disinclined to hold, on the record before us, that the proposed lease is a transaction outside of the ordinary course of business. In announcing the "economic soundness” test, the Biotech court evidently meant to scrutinize the transaction more carefully than it would under the "business judgment” standard.
Upon examination of the analysis that the court actually applied in that case, however, we are unable to detect any difference between the analysis undertaken under the “economic soundness" test and that which we would undertake in applying the business judgment test in the circumstances of the case. The court considered the risks of the proposed transaction, the available alternatives, and the danger of prejudice to the objecting parties, who, like the creditors here, had no protected interest in the cash to be expended to purchase the assets. See infra note 12. It concluded, as we would, that the purchase was a valid business decision.
Because we cannot clearly demarcate the difference between an "economic soundness" and a “business judgment” analysis, we see no reason to muddy the waters by introducing another level of scrutiny into the approval process.

. Nothing in the record suggests to us that the bank creditors here have an interest in rentals received from subleases of GECC cars or cash generated in the future by unencumbered cars that would make the transaction subject to the strictures on disposition of cash ■ collateral in § 363(c)(2). See In re George Ruggiere Chrysler-Plymouth, 727 F.2d 1017, 1019 (11th Cir.1984).

. We believe that the bankruptcy court’s discretion under 11 U.S.C. § 503 is broad enough to reject administrative claims that result from inequitable conduct, including entering into agreements in bad faith, when the inequitable conduct prevents the estate’s receiving the benefit that the court envisioned when it approved an agreement. See generally In re Allied Artists Industries, Inc., 35 B.R. 737 (Bankr.S.D.N.Y.1983). The bankruptcy court’s order in this case astutely reserves the right to exercise this discretion when and if GECC presents an administrative claim. If, as the bank creditors fear, GECC engages in the sharp practice of urging one interpretation of the amended lease’s waiver of existing defaults before bankruptcy court approval and another thereafter, principles of estoppel should come into play.
Moreover, we keep in mind that creditor misconduct has traditionally formed the basis for equitable subordination of a creditor’s priority status. See generally Allied Technology, Inc. v. *1313 R.B. Brunemann & Sons, 25 B.R. 484, 499 (Bankr.S.D.Ohio 1982); Matter of Multiponics, Inc., 622 F.2d 709 (5th Cir.1980).

. The bankruptcy court's order requires GECC to notify all parties in interest and the court before it declares a default under the amended lease. The broad equitable powers granted the bankruptcy court under 11 U.S.C. § 105 permit any party in interest to apply to the court to rescind its order lifting the stay in the event rehabilitation of the debtor requires such action.