In re David Mark METZNER, Debtor.

Gloria BAHAM, Creditor–Appellee,

v.

Michael CHIASSON, Trustee–Appellant.

Civ. A. No. 93–4149.

United States District Court,
E.D. Louisiana.

April 12, 1994.

David John Messina, Taylor, Porter, Brooks & Phillips, New Orleans, LA, for Michael Chiasson.

Douglas Scott Draper, Draper & Culpepper, New Orleans, LA, for David Mark Metzner.

Patricia A. "Chris" Christofferson, Fransen & Hardin, New Orleans, LA, for Gloria Baham.

### MEMORANDUM OPINION

LIVAUDAIS, District Judge.

This is an appeal by Michael Chiasson, the Trustee, of the Bankruptcy Court's Ruling lifting the automatic stay to enable creditor Gloria Baham to proceed to trial and judgment in a medical malpractice action against David Mark Metzner, M.D., the Debtor, and allowing her to seek to execute on any judgment $100,000 or more. Appellee Gloria Ba-

ham requests that the Bankruptcy Court's order be affirmed.

In reviewing the bankruptcy judge's decision on a question of law, the district court shall apply a *de novo* standard. Fed.Rules of Bankruptcy Procedure 8013; *Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1307 (5th Cir.1985). There is no dispute as to the facts. The question presented for review is legal, i.e., whether the Bankruptcy Court's decision to lift the stay based upon its interpretation of the Louisiana Medical Malpractice Act legally correct.

On September 1, 1993, Debtor David Mark Metzner filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Dr. Metzner is a physician who specializes in plastic surgery who had five medical malpractice actions pending against him at the time he filed his bankruptcy petition. Prior to the filing of the bankruptcy petition, he was a self-insured physician enrolled in the Patient's Compensation Fund ("PCF") established by the Louisiana Medical Malpractice Act. LSA–R.S. 40:1299.42.

The Louisiana Medical Malpractice Act (LSA–La.Rev.Stat. 40:1299.41 *et seq.*) provides a compensation scheme for medical malpractice victims who have been injured by health care providers qualified under the Act. The cap on the total amount recoverable by any malpractice victim for injuries or death is $500,000. LSA–R.S. 40:1299.42(B)(1). The liability of a single qualified health care provider to a patient suffering injuries or death as a result of medical malpractice is $100,000. LSA–R.S. 40:1299.42(B)(2).

A qualified health care provider under the Act is one who filed with the oversight board proof of financial responsibility and paid the surcharges assessed by the Act. LSA–R.S. 40:1299.42(A). Proof of financial responsibility for a self insured provider requires depositing $125,000.00 with the board. LSA–R.S. 40:1299.42(E). If a malpractice claimant obtains a judgment or secures a settlement in the amount of $100,000 or more, he may satisfy the judgment or seek payment of the settlement from the deposit and assert a claim for damages not to exceed an additional $400,000.00 against the PCF, an insurance fund. LSA–R.S. 40:1299.42(B); *Stuka v.*

*Fleming,* 561 So.2d 1371, 1373 (La.1990). The statute further provides that:

> In the event any portion of [the deposit] is seized pursuant to the judicial process, the self-insured health care provider shall have five days to deposit with the board the amounts so seized. The health care provider's failure to timely post said amounts with the board shall terminate his enrollment in the Patient's Compensation Fund.

LSA–R.S. 40:1299(E)(1).

The position of the PCF in medical malpractice actions is akin to that of an excess insurer with specific limited rights and duties. As noted in *Koslowski v. Sanchez,* 576 So.2d 470 (La.1991):

> The Louisiana Medical Malpractice Act contemplates only one party defendant, the health care provider. *Williams v. Kushner,* 449 So.2d 455 (La.1984). 'The fund is not a negligent party and does not have the status of an Article 2315 defendant.' *Williams v. Kushner,* 549 So.2d 294, 296 (La.1989). While the patient's compensation fund is not a party defendant, it is a third party with an interest in the proceedings when damages exceed $100,000. Therefore, the fund has the right to intervene in the case of an excess judgment against the fund. *Felix v. St. Paul Fire and Marine Ins. Co.,* 477 So.2d 676 (La. 1985).
>
> Liability under the Medical Malpractice Act is based on the initial $100,000 paid by the health care provider or its insurer, pursuant to judgment, settlement or arbitration. When the insurer has admitted liability up to the statutory maximum, the liability of the health care provider is established, and the only remaining issue is the damages, if any, owed by the patient's compensation fund. *The fund cannot contest liability when there is a binding settlement for $100,000 by the health care provider, either before or after trial.*

576 So.2d at 473–74 (emphasis in the original).

The PCF "is a creature of the legislature designed *only* to satisfy settlements and/or judgments against health care providers *in excess* of $100,000.00." *Schwarzenburg v.*

*Jackson,* 600 So.2d 163, 164–65 (La.App. 5th Cir.1992). The PCF must pay a final claim within 45 days of the receipt of the certified copy of the judgment. LSA–R.S. 40:1299.44. The statute requires in the case of a settlement that the funds actually be paid prior to the PCF acquiring an interest in the action, and after a settlement, the fund can contest only damages, not liability. *Id.* With respect to judgments, the act provides:

(b) A final claim shall be paid within forty-five days of the board's receipt of a certified copy of the settlement, judgment, or arbitration award, unless the fund is exhausted....

B. (2) The only claim against the fund shall be a voucher or other appropriate request by the board after it receives:

(a) A certified copy of a final judgment in excess of one hundred thousand dollars against a health care provider.

LSA–R.S. 40:1299.44.

Creditor-appellee Gloria Baham has filed a medical malpractice action against Dr. Metzner. In accordance with the act, she has submitted her claim to a medical malpractice panel, which has rendered an opinion, and she has a trial date pending in Civil District Court for the Parish of Orleans. She filed a motion in the bankruptcy court to have the automatic stay lifted so that she can proceed to trial and execute on any judgment she might secure in excess of $100,000 against the PCF. She understands that she cannot seize the $125,000 deposit Dr. Metzner placed with the PCF in order to become self-insured because if she is successful and he does not replace the deposit, Dr. Metzner's participation in the fund shall be terminated and the other four malpractice claimants will be unable to proceed against the fund for the excess.

The Bankruptcy Judge, upon considering the matter, agreed with Creditor Gloria Baham and signed the form of order she submitted, which provides:

IT IS ORDERED, ADJUDGED AND DECREED to modify the Automatic Stay issued herein to enable Gloria Baham to proceed to trial and judgement [sic] in a personal injury damage suit against Dr. David M. Metzner, now pending in the State of Louisiana, in the Civil District Court for the Parish of Orleans entitled Gloria B. Baham vs. Dr. David M. Metzner, Civil Action Number 89–8660, Division "F", on the docket of said court; continuing the Stay to prevent execution of any judgment obtained in said proceedings against Dr. David Metzner *for less than $100,000.00,* all in accordance with 11 USC 362(D).

*In re David Mark Metzner, 302–32–3860, Debtor,* Case No. 93–13169, November 16, 1993 (emphasis added).

Michael Chiasson, Trustee, appealed from the Bankruptcy Court's ruling, seeking to have Ms. Baham's action stayed and to prevent execution against the fund. The Trustee argues that he has not contracted with a lawyer to represent Dr. Metzner in the action, so that a trial on the claim probably would amount to a confirmation of a default. He further argues that no execution against the fund should be allowed until counsel for the PCF intervenes in the suit and an agreement reached as to how the PCF will treat the other known malpractice claims pending, as well as the other pre-petition claims which may yet be filed. Dr. Metzner is a plastic surgeon who performed numerous breast implant surgeries.

Both parties agree that the question presented here brings to light a serious conflict between the Bankruptcy Code and the Louisiana Medical Malpractice Act. While the protection afforded by the Bankruptcy Code certainly inures to the benefit of the debtor, it also inures to the benefit of the creditors to ensure that all are treated fairly and equitably. The record reflects that Ms. Baham has a significant claim which may well exceed the $100,000 exposure of the individual physician. What the record does not reveal is how serious the claims of the other malpractice victims are. The fact that they are in more preliminary stages of the litigation against Dr. Metzner should not preclude them from seeking an equitable share of the assets available.

The unknown in this equation is the position the PCF will take respecting the malpractice claims. If it acts as an excess carri-

er, then the fund should provide an additional $400,000 in coverage to each of the five claimants, irrespective of the self-insured deposit. While the claimants will be unable to seek the additional $400,000 if their damages do not exceed $100,000, they should be able to proceed to trial to have their claims quantified. The Trustee's suggestion that the PCF may choose to reach an agreement with the Trustee to hire an attorney to defend these claims may well suit the needs of the PCF, but at this stage of the litigation and of the bankruptcy proceeding, they have not intervened. To be avoided is allowing Ms. Baham to recover her damages in excess of $100,000, but in so doing preclude the other claimants from recovering their excess damages.

Certainly, the Bankruptcy Judge's decision to allow Ms. Baham to proceed to trial is correct. She must be allowed to quantify her damages in the forum where she would have tried her case. Continuing the stay to prevent execution of any judgment against Dr. Metzner "for less than $100,000.00" is more problematical. To achieve the Bankruptcy Judge's goal of allowing her to execute against the PCF, but restraining her from seizing the deposit, would have required an order preventing execution of any judgment "in excess of $100,000.00", since the self-insured physician is liable for any judgment against him up to *and including* $100,000.00. LSA–R.S. 40:1299.42(B)(2).

Because of the nature of this issue and the interplay between the medical malpractice statute and the bankruptcy laws, this Court finds it essential that the PCF participate actively in the resolution of this problem. If the PCF takes the position that satisfying one judgment will terminate its liability to all other claimants, the Trustee can take appropriate action by pursuing the fund on behalf of the other malpractice claimants if it appears that the value of their claims exceeds $100,000.00. At this juncture, the safest course of action is to allow Ms. Baham to proceed to trial and secure a judgment, if she can, in excess of $100,000.00. She can notify the PCF of the claim and at that point the PCF will become an interested third party. Once the PCF intervenes, the Bankruptcy Court shall be in a better position to determine the effect that Ms. Baham's intended execution of her excess judgment against the PCF will have on the other malpractice claimants.

Accordingly, for the above and foregoing reasons,

**IT IS ORDERED** that the order of the Bankruptcy Judge be and is hereby **AFFIRMED** in part and **REVERSED** in part, in accordance with this opinion, as follows. The automatic stay issued in the Bankruptcy Court is modified to allow Gloria Baham to proceed to trial and judgment in a medical malpractice personal injury action against Dr. David M. Metzner, bearing the caption *Gloria B. Baham v. Dr. David M. Metzner,* Civil Action No. 89–8660, Division "F", Civil District Court, Parish of Orleans, State of Louisiana. Execution of any judgment rendered in that action is stayed, except that plaintiff may serve a copy of the judgment on the Patient's Compensation Fund. Plaintiff must apply to the Bankruptcy Court for further modification of the stay in order to attempt to execute against the fund after judgment in excess of $100,000.00, has been rendered and the Patient's Compensation Fund notified.