BAHAM, et al.

v.

**TRUSTEE IN BANKRUPTCY OF the ESTATE OF David METZNER, M.D.**

Civ. A. No. 94–1546.

United States District Court, E.D. Louisiana.

July 24, 1995.

there is nothing upon which to exercise supplemental jurisdiction under 28 U.S.C. § 1367.

Patricia A. "Chris" Christofferson, A. Remy Fransen, Fransen & Hardin, New Orleans, LA, for Gloria B. Baham.

Robert Fernand Shearman, R. Ray Orrill, Jr., Orrill, Shearman & Cordell, L.L.C., New Orleans, LA, for R. Ray Orrill, Jr.

Robert Fernand Shearman, R. Ray Orrill, Jr., Orrill, Shearman & Cordell, L.L.C., New Orleans, LA, for Orrill & Shearman.

Hervin A. Guidry, John Neely Kennedy, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, LA, David John Messina, Paul Joseph Ory, Taylor, Porter, Brooks & Phillips, New Orleans, LA, for David Metzner.

Hervin A. Guidry, John Neely Kennedy, New Orleans, LA, for Louisiana Patient's Compensation Fund.

## ORDER AND REASONS

JONES, District Judge.

The Louisiana Patient's Compensation Fund ("PCF") brought this motion for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201. Under the facts and circumstances of this case, and for the reasons stated below, the Court finds that the PCF remains liable for up to $400,000 for each of the pre-bankruptcy medical malpractice claimants whose claims against David M. Metzner, M.D. exceed $100,000 in value.

### Background

On October 20, 1995, Gloria Baham filed a complaint against Dr. Metzner before a medical review panel pursuant to the Louisiana Medical Malpractice Act. La.R.S. 40:1299.41 *et seq.* The Act is a mechanism for providing compensation to victims of malpractice who were injured by "qualified health care providers." Dr. Metzner is a self-insured, qualified health care provider. Under the Act, a qualified health care provider remains liable for the first $100,000 of a patient's damages. La.R.S. 40:1299.42(B)(2). The PCF is liable for damages exceeding $100,000, up to a maximum of $400,000, plus interest and costs, and the cost of future medical care. La.R.S. 40:1299.42(B)(1). Thus, the Act permits each malpractice claimant to receive a maximum of $500,000. *Id.*

Pursuant to the Act, a medical review panel considered Baham's case. Had Metzner been a health care provider who was not qualified, claims would not have been submitted to a medical review panel prior to bringing suit. La.R.S. 40:1299.47. The panel

found that there was an issue of material fact concerning liability for consideration by the courts. As a result, Baham filed a malpractice action in state court.

Eventually, Dr. Metzner filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Prior to the bankruptcy, other claimants filed complaints against Metzner before the medical review board.

Baham's malpractice claim was removed to federal court and ultimately settled on February 24, 1995,[1] pursuant to a "Joint Petition for Court Approval of Medical Malpractice Claim." (R.Doc. 13)

Because other pre-bankruptcy claimants exist, the approved settlement provided that "while the Bankruptcy Trustee will stipulate that Baham's claim against the underlying $100,000 shall be fixed at $100,000, Baham may only be entitled to receive a pro rata share of this amount, such share of Baham to be determined at a future time after all of the other pending medical malpractice claims against Dr. Metzner and the Bankruptcy Trustee have been compromised, reduced to final judgment or otherwise resolved upon good faith proof of liability of Dr. David Metzner." (R.Doc. 13)

The joint petition further provided that the excess judgment, over and above the underlying $100,000 against the estate, was to be satisfied by the PCF by paying the $100,000 into the registry of the court, to be held in escrow until a final, nonappealable judgment is rendered pertaining to the distribution of the $100,000 in accordance with the Louisiana Medical Malpractice Act.

In the present declaratory judgment action, PCF seeks to clarify its obligations to Baham and the other claimants under the Act.

The parties agree that there have been no decisions reported that control the issues in this case. PCF stated the issues as follows:

1) What rights does Baham have to the $100,000 deposited into the registry of the court by PCF?

2) What further liability does the PCF have for any additional pre-bankruptcy medical malpractice claims?

## Law and Argument

■ The Medical Malpractice Act must be strictly construed, and qualified status must be denied when the statutory requirements have not been met. *Williams v. St. Paul Insurance Companies*, 419 So.2d 1302 (La. App. 4th Cir.1982), *cert. denied*, 423 So.2d 1182 (La.1982).

■ Health care providers become "qualified" health care providers through self-insurance, or by filing proof of insurance with the Louisiana Patient's Compensation Fund Oversight Board. La.R.S. 1299.42(E)(1). Dr. Metzner was self-insured, which meant that he filed proof of financial responsibility by depositing with the board $125,000 in money or in other value.

PCF argues that Dr. Metzner is no longer a qualified health care provider because under the Act he is required to replenish within five days, any amount seized pursuant to judicial process. La.R.S. 1299.42(E)(1). Failure to timely deposit the amounts terminates enrollment in PCF. Id. Therefore, because Dr. Metzner did not replenish the funds once the settlement was entered (or alternatively if the doctor fails to replenish the fund once Baham is actually paid), the doctor is disenrolled and Baham receives the entire $100,000 deposited in the registry of the court. Under the PCF's rationale, the other pre-bankruptcy claims against Metzner would not be paid out of the fund, because the failure to replenish the money after the settlement with Baham would disenroll and disqualify Metzner. In support of this reading of the statute, section 1299.25(A)(1) provides that the Act only applies when the security required by the board remains undiminished.

The Court finds that the bankruptcy caused all pre-bankruptcy claims to be frozen by the automatic stay entered as a result of

---

1. The total settlement was $200,000 with the bankruptcy estate paying $100,000 and the PCF paying the $100,000 that was deposited in the registry of the court. (See p. 4 of the Joint Petition for Court Approval of Settlement of Medical Malpractice Claim and the Order of Approval, pp. 8–9, R.Doc. 13).

the bankruptcy pursuant to 11 U.S.C. § 362.[2] With a stay in place, no claimant may seize the deposits, and thus there is no need to post additional amounts to replenish any amount since no seizure occurred.[3]

■ This result is equitable in light of the claimants' reliance on PCF's notice that Metzner was a qualified health care provider. Under those circumstances, each patient was required to file claims with the medical review panel prior to filing for damages in civil district court. La.R.S. 40:1299.47. The claimants' reliance on Metzner's status as a qualified health care provider justifiably requires PCF to make $400,000 available to each claimant if at least $100,000 in damages is proven by that claimant. La.R.S. 40:1299.42(B)(1). Each of the pending pre-bankruptcy claims is separate and distinct and unrelated to Baham's case. To hold these claimants to a single $400,000 or to a share of the remaining $300,000 of Ms. Baham's claim would violate both the letter and spirit of the Act.[4]

■ Furthermore, because the stay froze all claims against the doctor, all claimants who establish liability should ultimately be able to acquire a part of the underlying $100,000 held by the bankruptcy estate on a pro rata basis.

This result is not inconsistent with the Act, which contemplates a pro rata distribution of funds in the event that the fund would be exhausted by payment in full of all final claims. La.R.S. 40:1299.44(A)(7)(c).

Conclusion

Accordingly,

IT IS ORDERED that when and if the pre-bankruptcy claimants become eligible under the Louisiana Medical Malpractice Act, the pre-bankruptcy claimants are to be allotted a pro rata share of the $100,000 held by the bankruptcy estate of Dr. Metzner.

IT IS FURTHER ORDERED that the funds are to be distributed when all of the pre-bankruptcy claimants' final, non-appealable judgments against Metzner are entered.

IT IS FURTHER ORDERED that each pre-bankruptcy claimant who shows, pursuant to the Act, that the health care provider's liability is greater that $100,000, be eligible for funds, not to exceed $400,000 from the PCF, per claimant.

IT IS FURTHER ORDERED, that the $100,000 deposited by the PCF in the registry of the court should be released to the Bahams.

2. Baham is the only claimant to ask that the stay be lifted to ascertain liability against Dr. Metzner and the PCF.

3. The plaintiff understood that the $125,000 could not be seized as the court stayed execution on any judgment. *In re Metzner*, 167 B.R. 414, 417 (Bankr.E.D.La.1994).

4. Most recently, the Louisiana Supreme Court noted that in allocating the $500,000 medical malpractice "cap," unless the "scope of the risks" included the parties collectively, liability under the Act provides: "[f]or one patient and one injury there is but one cap." *Turner v. Massiah*, 656 So.2d 636 (La.1995).