**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**July 31, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 02-40734

In The Matter Of: TEXAS HEALTH ENTERPRISES INC
                  Debtor
-------------------------
TEXAS HEALTH ENTERPRISES INC; OFFICIAL UNSECURED CREDITORS'
COMMITTEE OF TEXAS HEALTH ENTERPRISES INC
                  Appellants
    v.
LYTLE NURSING HOME
                  Appellee


In The Matter Of: TEXAS HEALTH ENTERPRISES INC
                  Debtor
-------------------------
TEXAS HEALTH ENTERPRISES INC
                  Appellant
    v.
LYTLE NURSING HOME
                  Appellee

In The Matter Of: TEXAS HEALTH ENTERPRISES INC
                  Debtor
-------------------------
OFFICIAL UNSECURED CREDITORS' COMMITTEE OF TEXAS
HEALTH ENTERPRISES INC
                  Appellant
    v.
LYTLE NURSING HOME
                  Appellee


Appeal from the United States District Court
for the Eastern District of Texas, Sherman
No. 4:00-CV-412


Before KING, Chief Judge, and REAVLEY and STEWART, Circuit

1

Judges.

PER CURIAM:[*]

Texas Health Enterprises, Inc. and the Trustee of the bankruptcy estate appeal the bankruptcy court's denial of their motion to assume a management contract and grant of Lytle Nursing Home, Inc.'s motion to confirm rejection of the management contract. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

**A. Facts**

Appellant Texas Health Enterprises, Inc. ("Texas Health") operated and managed over one hundred nursing homes throughout Texas. Texas Health filed a voluntary petition for Chapter 11 bankruptcy on August 3, 1999.

Prior to its bankruptcy, Texas Health operated the nursing home owned by Appellee Lytle Nursing Home, Inc. ("Lytle") according to a management contract (the "Management Contract") and a lease (the "Lease"). After filing for bankruptcy, Texas Health moved to assume the Management Contract pursuant to 11 U.S.C. § 365(a) (2000).[1] Texas Health wished to assume this

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Though the motion originally referred only to the Lease, not the Management Contract, Texas Health later amended the motion to refer only to the Management Contract.

contract in order to preserve its value for the benefit of the bankruptcy estate.  The Official Creditors' Committee of Texas Health (the "Creditors' Committee") supported Texas Health in this request.

**B.    Procedural History**

The bankruptcy court conducted a hearing on Texas Health's motion to assume the Management Contract and then issued an order and opinion denying the motion.  The bankruptcy court found that Texas Health had not set forth adequate assurance of future performance, as 11 U.S.C. § 365(b)(1)(C) requires.  Texas Health and the Creditors' Committee then filed a motion for reconsideration, which the bankruptcy court denied after a hearing.

Lytle filed a motion to "confirm [the] rejection" of the Management Contract and the Lease.  Texas Health and the Creditors' Committee filed responses in which they requested a hearing.  The bankruptcy court granted Lytle's motion in part[2] and declared the Management Contract rejected without an additional hearing.  Texas Health and the Creditors' Committee

---

Nonetheless, the bankruptcy court stated it would "consider[] [the Management Contract and the Lease] as a whole rather than tak[ing] [them] up separately as suggested."

[2]    In the motion, Lytle also sought to compel Texas Health to surrender possession of the real property comprising the nursing home to Lytle.  The bankruptcy court did not initially rule on this portion of motion, though the court later granted it as well.

3

appealed the bankruptcy court's orders denying their motion to assume, denying their motion for reconsideration, and granting Lytle's motion to confirm rejection. The bankruptcy court then confirmed Texas Health's plan of reorganization. Appellant Dennis Faulkner was designated plan trustee (the "Trustee") and he replaced the Creditors' Committee in this appeal.

The district court affirmed all of the bankruptcy court's orders.

Texas Health and the Trustee (collectively the "Appellants") now appeal. They argue that: (1) the bankruptcy court erred in denying their motion to assume the Management Contract; and (2) the bankruptcy court erred in granting Lytle's motion to confirm rejection of the Management Contract.[3]

## II. STANDARD OF REVIEW

This court reviews a bankruptcy court's findings of fact for clear error and conclusions of law de novo. E.g., In re Nat'l Gypsum Co., 208 F.3d 498, 504 (5th Cir. 2000). Whether a debtor has provided adequate assurance of future performance is a finding of fact reviewed under the clearly erroneous standard.[4]

---

[3] Appellants abandoned their argument that the bankruptcy court abused its discretion in denying their motion for reconsideration in their appeal to this court.

[4] Appellants urge us to review the bankruptcy court's determination that Texas Health did not provide adequate assurance of future performance de novo because, in their view, the bankruptcy court used an improper legal standard. But, the bankruptcy court stated the correct legal standard for

4

E.g., Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1307-08 (5th Cir. 1985).

## III.  DISCUSSION

**A.  Whether the bankruptcy court clearly erred in denying Texas Health's initial motion to assume the Management Contract**

The bankruptcy code allows a trustee to assume or reject any executory contract[5] of the debtor with the bankruptcy court's approval.  See 11 U.S.C. § 365 (2000).  Because 11 U.S.C. § 1107(a) gives a debtor-in-possession most rights of a trustee, a debtor-in-possession (such as Texas Health) may assume an executory contract with bankruptcy court approval.  See id. § 1107(a).  Under § 365(b)(1), a debtor-in-possession that has previously defaulted on an executory contract may not assume that contract unless it: (A) cures, or provides adequate assurance that it will promptly cure, the default; (B) compensates the non-debtor party for pecuniary loss resulting from the default; and (C) "provides adequate assurance of future performance under such contract or lease."  Id. § 365(b)(1).  Only the third requirement is at issue in this case.

---

determining whether a debtor has provided adequate assurance of future performance and applied that standard by evaluating the relationship between the parties, the circumstances surrounding prior breaches, and the conflicting testimony about the possibility of future breaches.  We thus reject Appellants' argument in favor of a de novo standard of review.

[5]  The parties agree that the Management Contract is an executory contract.

5

As the bankruptcy court correctly noted, whether a debtor has given adequate assurance is extremely fact-specific. This court has previously stated: "The terms 'adequate assurance of future performance' are not words of art; the legislative history of the [Bankruptcy] Code shows that they were intended to be given a practical, pragmatic construction." Richmond Leasing Co., 762 F.2d at 1309 (quoting In re Sapolin Paints, Inc., 5 B.R. 412, 420 (E.D.N.Y. 1980)). Some helpful factors include "whether the debtor's financial data indicated its ability to generate an income stream sufficient to meet its obligations, the general economic outlook in the debtor's industry, and the presence of a guarantee." Id. at 1310. The burden of proof is on Texas Health to show that it gave "adequate assurance." See, e.g., In re Rachels Indus., Inc., 109 B.R. 797, 802 (W.D. Tenn. 1990).

The bankruptcy court did not clearly err in finding that Texas Health did not provide adequate assurance. The bankruptcy court reviewed the Management Contract and the Lease and heard testimony from Richard Knight, Texas Health's President and Chief Operating Officer, James F. Cotter, Lytle's President, and William Sleeth, Lytle's Comptroller. Though Knight stated that the Management Contract would benefit Texas Health and that Texas Health was prepared to cure its previous defaults and perform in the future, Cotter and Sleeth testified that Texas Health had a history of monetary defaults, poor communication, and outright

6

refusals to follow Lytle's instructions.  The bankruptcy court appropriately weighed this conflicting testimony and found that Texas Health had not shown it would likely perform in the future. See Richmond Leasing Co., 762 F.2d at 1310 (upholding the bankruptcy court's determination that the debtor provided adequate assurance after weighing conflicting testimony about the debtor's future profitability).

Texas Health argues that the bankruptcy court must allow assumption if the assumption would benefit the estate.  We have previously stated that "the question of whether a lease should be rejected . . . is one of business judgment," but we have also recognized that the bankruptcy court need not approve every contract that is beneficial to the debtor if the debtor cannot assure performance on the contract.  Id. at 1309 (quoting Group of Inst. Investors v. Chicago, Milwaukee, St. Paul & Pac. R.R. Co., 318 U.S. 523, 550 (1943)).  Though § 365 benefits the debtor by allowing it to assume contracts beneficial to the estate, it also puts a specific limitation (the adequate assurance requirement) on which contracts may be assumed, providing a measure of protection for the non-debtor.  See In re Nat'l Gypsum Co., 208 F.3d at 506.  Thus, Texas Health may not assume a beneficial executory contract unless it gives adequate assurance of future performance.

Texas Health also argues that the bankruptcy court cannot

rely on evidence of prior defaults or defaults involving other parties to support its conclusion that Texas Health will be unable to perform.[6]  Evidence of prior defaults, though, is probative of whether the debtor will be able to perform in the future.  See, e.g., In re Gen. Oil Distribs., Inc., 18 B.R. 654, 658 (E.D.N.Y. 1982) ("What constitutes adequate assurance is a factual question to be determined on a case by case basis with due regard to the nature of the parties, their past dealings and present commercial realities.").  The bankruptcy court thus did not clearly err in finding that Texas Health did not meet its burden of providing adequate assurance of future performance.

**B.  Whether the bankruptcy court erred in granting Lytle's motion to declare the Management Contract and the Lease rejected after it denied Texas Health's motion to assume the**

---

[6]     Texas Health makes two evidentiary objections as part of this argument.  Evidentiary rulings are reviewed for an abuse of discretion.  See, e.g., Green v. Adm'rs of the Tulane Educ. Fund, 284 F.3d 642, 660 (5th Cir. 2002).

First, Texas Health argues that the bankruptcy court erred in allowing testimony about a letter from Lytle regarding a wrongful death suit because that testimony violated the Best Evidence Rule.  The court did not abuse its discretion because the testimony was used to show that Lytle sent Texas Health a letter and not to prove the content of that letter.  See FED. R. EVID. 1002 (requiring an original writing "[t]o prove the content" of that writing).

Second, Texas Health argues that the bankruptcy court erred in admitting evidence of breaches with other nursing homes, which Texas Health believes irrelevant.  The bankruptcy court found this evidence relevant because "the course of conduct [] in obviously an identical situation or substantially identical situation, is relevant [] to the ability to perform in the future."  Given this reasoning, the bankruptcy court did not abuse its discretion.

8

**Management Contract**

Initially, the bankruptcy code makes it clear that it is the choice of the debtor-in-possession, and not the bankruptcy court, to assume or reject an executory contract. Section 365 gives the debtor-in-possession the power to accept or reject an executory contract as part of its reorganization. See 11 U.S.C. § 365(a) (2000) (stating that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor"). At the same time, the bankruptcy court may deny a motion to assume an executory contract if the requirements set forth in 11 U.S.C. § 365 have not been met. See 11 U.S.C. § 365(b)(1) (2000); In re Sundial Asphalt Co., 147 B.R. 72, 80 (E.D.N.Y. 1992) ("The Court finds nothing in the statute or the Bankruptcy Rules providing for rejection or assumption of an executory contract by any party other than the trustee or debtor in possession, and finds no authorization for the court making such an election sua sponte, although whatever election is made by the trustee is subject to the court's approval.").

The denial of a debtor-in-possession's motion to assume an executory contract does not mean that the contract is automatically rejected. See In re F.W. Rest. Assocs., Inc., 190 B.R. 143, 149 n.8 (D. Conn. 1995) ("A court's denial of a debtor-in-possession's motion to assume an executory contract does not

effect a _pro tanto_ rejection of the subject contract."). There is nothing in the bankruptcy code that bars a debtor-in-possession from making successive motions to assume a given contract as its financial situation improves. _See_ _In re Food City_, 94 B.R. 91, 95 (W.D. Tex. 1988) ("All that is currently before the court is a request for approval of assumption of these contracts at this stage of the bankruptcy. A refusal of that request at this time does not prevent the debtor from again seeking that approval later in the proceedings."). But, a debtor-in possession can be required to assume an executory contract within a given time frame: "[T]he court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease." 11 U.S.C. § 365(d)(2). Further, an executory contract must be assumed prior to confirmation of the debtor's plan of reorganization. _See_ _id._

In this case, then, the fact that the bankruptcy court denied Texas Health's initial motion to assume the Management Contract did not mean that the contract was "rejected." Nonetheless, we view the Management Contract as deemed rejected in light of the bankruptcy court's additional proceedings. According to § 365, the bankruptcy court may, upon request of a party, set a deadline by which an executory contract must be assumed or rejected. Effectively, that is what the bankruptcy

10

court did in this case.[7]  After the bankruptcy court denied Texas Health's motion to assume and its motion for reconsideration, after a hearing on each motion, Lytle filed a motion to have the Management Contract declared rejected.  The bankruptcy court allowed for additional briefing within a specified period of time, in which Texas Health provided no new arguments or evidence to suggest that it would be prepared to perform on the Management Contract.  Faced with the recognition that allowing Texas Health to make further motions to assume the Management Contract would be futile, the bankruptcy court deemed it rejected.[8]  Rather than elevate form over substance, we elect to view the bankruptcy court's action as a deemed rejection under 11 U.S.C. § 365(d)(2) and affirm on that basis.[9]

---

[7]  We recognize that the procedure followed by the bankruptcy court did not strictly adhere to § 365(d)(2), and on a different record, we might be compelled to reverse.  For the reasons indicated, on this record, the Management Contract was properly deemed rejected.

[8]  Appellants argue that we should remand for a hearing because assumption or rejection of an executory contract or lease is a contested matter requiring a hearing.  See FED. R. BANKR. P. 6006(a) (explaining that assumption or rejection is a contested matter); see also FED. R. BANKR. P. 9014 (explaining the required procedures for contested matters).  But, Texas Health received two hearings: one on its motion to assume the Management Contract and one on its motion for reconsideration.  In its response in opposition to Lytle's motion to declare the Management Contract rejected, Texas Health did not suggest that it had any new evidence that would make another hearing of value.  In this particular case, then, another hearing was not required.

[9]  The Trustee's final argument is that the bankruptcy court granted relief based on a motion that violated Local Rule

11

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM. Costs shall be borne by Appellants.

---

9004(b). Local Rule 9004(b) states that "[a] separate motion is required for each form of relief requested." E.D. TEX. BANKR. R. 9004(b). The Trustee argues that Lytle's motion violated this rule because it requested an order confirming rejection of the Management Contract, or an order compelling the debtor to reject the executory contract, or an order setting a date by which Texas Health must reject the Management Contract, or an order granting Lytle possession of the nursing home property. The bankruptcy court accepted this motion, apparently finding no violation of the Local Rules that warranted striking the document. This decision is reviewed for an abuse of discretion. See Victor F. v. Pasadena Indep. Sch. Dist., 793 F.2d 633, 635 (5th Cir. 1986). Because the Trustee has not articulated any reason why the bankruptcy court abused its discretion, we find no reversible error.

12