In re LOCKWOOD
ENTERPRISES, INC., Debtor.

FLUSHING SAVINGS BANK,
Appellant,

v.

Jules TEITELBAUM, as Trustee of
Lockwood Enterprises,
Inc., Appellee.

No. 85 Civ. 9155–CSH.

United States District Court,
S.D. New York.

Feb. 2, 1987.

Jeffrey L. Sapir, Yonkers, N.Y., for debtor.

Jules Teitelbaum, P.C., New York City, for Jules Teitelbaum, operating trustee.

Robert P. Herzog, New York City, for official creditors' committee.

Schutzman & Schutzman, Wantagh, N.Y., for Flushing Sav. Bank.

Cornelius Blackshear, New York City, U.S. trustee.

Ralph Camardo, Albany, N.Y., for New York State Dept. of Social Services.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Flushing Savings Bank ("Flushing" or the "Bank") appeals pursuant to 28 U.S.C. § 158(a) from an order of the Bankruptcy Court for the Southern District of New York, Hon. Howard Schwartzberg, Bankruptcy Judge, fixing the monthly use and occupation of its lessee and the debtor herein, Lockwood Enterprises, Inc. ("Lockwood") at $20,000. Lockwood presently leases premises owned by Flushing in New Rochelle, New York for use as a 250–bed adult care facility.

Lockwood appears to have occupied the premises since September 22, 1983, when it entered into a lease for the premises with CCN Realty Corp. ("CCN") as landlord. Lockwood filed a voluntary Chapter 11 reorganization petition on January 22, 1984. Jules Teitelbaum was appointed Trustee for Lockwood on September 17, 1984 and continues to operate its business.

Flushing held a mortgage in the premises and secured a foreclosure judgment February 14, 1985. Flushing purchased the property at the foreclosure sale in April, 1985.

In August, 1985, Flushing moved in the Bankruptcy Court for an order increasing the use and occupancy to $34,541.88. The figure was based on the rent schedule provided in the lease agreement between Lockwood and CCN entered into in September, 1983. Judge Schwartzberg held an evidentiary hearing October 18, 1985. At the conclusion of the hearing, Judge Schwartzberg granted Flushing's motion in part,

increasing the monthly payment to $20,000. Flushing appeals from that order.

*Discussion*

The parties agree that the standard of review governing this appeal is set forth in Rule 8013 of the Bankruptcy Rules, which provides:

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

The "clearly erroneous" standard applies not only to credibility questions, but also to findings of fact " 'based ... on physical or documentary evidence or inferences from other facts.' " *Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1308 (5th Cir.1985) (per curiam) (analogizing "clearly erroneous" standard of review under Bankruptcy Rule 8013 to standard of review under F.R.Civ.P. 52(a), and quoting *Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985)).

██ Unless and until a trustee expressly assumes a lease, the trustee is liable only for the "reasonable value of the use and occupancy of the premises." 2 Collier on Bankruptcy 365–32 (15th ed. 1986) (citing *Philadelphia Co. v. Dipple,* 312 U.S. 168, 61 S.Ct. 538, 85 L.Ed. 651 (1941)). That amount may or may not equal the amount reserved in the lease agreement. *Id.* at 365–32—365–33.

However, " '[t]here is a presumption to the effect that the contractually reserved rent is reasonable.' " " 'The *quantum* of allowance for use and occupation by the receiver or trustee is measured by "the reasonable value of such use and enjoyment." Ordinarily this will be the contractual rental, *pro rata temporis,* unless it is shown that the contractual rental itself is clearly unreasonable.' " *S & W Holding Co. v. Kuriansky,* 317 F.2d 666, 667 (2d

Cir.1963) (quoting 3 Collier, Bankruptcy 1516 (14th ed. 1961)).

■ Judge Schwartzberg declined to apply that presumption, finding that the 1983 lease agreement was not an arms-length transaction. Tr. 69.

Flushing asserts there was no evidence in the record to support this finding, and that the Bankruptcy Judge erred in not applying the presumption. However, I cannot hold the Bankruptcy Judge's finding clearly erroneous. In a previous bankruptcy proceeding before Judge Schwartzberg involving CCN, 83 B 20494, counsel for Flushing averred that "the lease agreement that CCN now claims to have with Sanchez [for Lockwood] as of 9/30/83 is specious. Sanchez and CCN had no legal right to enter into a lease." Tr. 55. That earlier affidavit was not formally introduced into evidence, but the above-quoted statement was read into the record without objection, contradiction, or explanation by Flushing. In these circumstances, I cannot find the Bankruptcy Judge's finding clearly erroneous.

■ Flushing next contends that even if the 1983 lease is not presumptive evidence of the reasonable value of use and occupancy, a previous lease for the same premises should be afforded that presumption. However, it does not appear that Lockwood or Flushing was a party to that leasehold. Flushing cites no authority for the startling proposition that a superceded leasehold to which the debtor was not a party is presumptive evidence of the reasonable value of use and occupancy. To adopt such a rule would in many instances give rise to conflicting presumptions as to the reasonable value of the leasehold.

■ Finally, Flushing argues that all the evidence in the record supports a figure for reasonable use and occupancy substantially higher than $20,000 per month. Flushing relies on evidence from the records of New York's Department of Social Services. A compilation of lease agreement data by that agency for New York City and Nassau, Suffolk and Westchester Counties indicates that the average monthly "bed costs" for a 250–bed adult home ranges from about $31,500 to about $47,400, depending on the nature of the facility's lease agreement and its real estate taxes. Flushing Ex. 16.

However, the "bed costs" varied widely among the various facilities, as did the annual lease costs. The $20,000 figure chosen by the Bankruptcy Judge falls within the range of lease costs and bed costs listed in that compilation. No evidence was offered that the costs at Lockwood's facility are average. The Bankruptcy Judge heard evidence that Lockwood had itself undertaken a number of repairs to the facility, and took into account Flushing's expenses in arriving at the $20,000 figure. Whether or not this Court would have arrived at the same figure—a question upon which I express no view—I cannot hold the Bankruptcy Judge's determination clearly erroneous. *See Anderson, supra,* 105 S.Ct. at 1512 (even if reviewing court would have decided case differently, it may not hold the trial court's findings clearly erroneous as long as they are "plausible in light of the record viewed in its entirety").

*Conclusion*

The order of the Bankruptcy Court is affirmed.

The foregoing is SO ORDERED.