**SKINS AND LEATHER COMPANY, INC., Appellant,**

v.

**TWIN CITY LEATHER COMPANY, INC., Appellee.**

**Charles G. Potter Leather, Inc., Appellant,**

v.

**Twin City Leather Company, Inc., Appellee.**

**Nos. 97–CV–636 RSP, 97–CV–637 RSP.**

United States District Court, N.D. New York.

March 31, 2000.

Dreyer Boyajian, LLP, Albany, New York, John B. Casey, of counsel, for appellant.

O'Connor, O'Connor, Mayberger & First, P.C., Albany, New York, Michael Jude O'Connor, of counsel, for appellee.

### MEMORANDUM DECISION AND ORDER

POOLER, Circuit Judge.*

Charles G. Potter Leather, Inc. and Skins and Leather Co., Inc. (collectively, "the Potter Companies"), appeal from two orders of the United States Bankruptcy Court for the Northern District of New York (Littlefield, J.), entered March 3 and 4, 1997, which ordered Potter Leather to pay $56,609.84 and Skins and Leather to pay $49,144.24 to the debtor-plaintiff. *See* dkt. no 1, item no. 1.[1] Defendants argue that the bankruptcy judge erred in (1) refusing to allow defendants to offer videotaped testimony of expert witness Jack Feuer and denying defendants' motion, in the alternative, for a 30–day continuance to hear Mr. Feuer's testimony; (2) rejecting the testimony of witness Wayne Brooks on the ground that he had a busi-

* Rosemary S. Pooler, United States Court of Appeals for the Second Circuit, sitting by designation as a United States District Court Judge for the Northern District of New York.

1. Although docketed as two separate appeals, the parties have treated the appeals as one for purposes of argument. The contents of the record and the parties' submissions on the two appeals are identical.

ness relationship with the Potter Companies; and (3) finding that only 1/8 of the deerskins at issue were damaged and ordering defendants to pay the debtor-plaintiff monetary damages. *See* dkt. 3. For the reasons that follow, I affirm the orders of the Bankruptcy Court in their entirety.

## I. Factual Background

The Potter Companies purchase raw deerskins, contract with outside entities to convert the raw skins into finished leather, and subsequently sell the finished leather to customers worldwide. *See* Transcript of Proceedings dated 11–12–96 ("Trans.I"), at 5. During the fifteen years preceding this litigation, defendants often contracted with debtor-plaintiff Twin City for the processing and finishing of raw skins. *See id.* at 12. In the 1994–1995 season, Twin City processed the Potter Companies' entire inventory, approximately 118,000 or 119,000 skins. *See id.* at 6, 13. Twin City commenced these adversary proceedings, seeking to recover $56,164.84 from Skins and Leather and $64,696.95 from Potter Leather, allegedly owed under the parties' contracts. *See* compl., dkt. 1, item no. 4. The Potter Companies answered and asserted counterclaims against Twin City totaling $340,000.00, alleging that Twin City had damaged certain deerskins during processing and that the damage resulted in a reduction of defendants' profits on the ultimate sale of the skins. *See* answer, dkt. No. 1, item 5.

The parties stipulated Twin City was entitled to the amount it claimed under the contract; the only issue remaining before the court was whether defendants were entitled to an offset based upon their counterclaims. *See* Decision & Findings of Fact, dkt. no. 1, item 36, at 4. The bankruptcy judge relied heavily on Twin City's admissions at trial in finding that Twin City had caused sufficient damage to some of defendants' skins to warrant an offset. *See id.* at 7. The court had difficulty "determining the quantity of damages from a record defendants didn't fully develop at trial." *Id.* at 9. Ultimately, the court relied on testimony from Richard Garber, who saw plaintiff's raw fleshing machine mark or gouge skins fed through the machine. *See id.* The court concluded that plaintiff's machine had damaged one of every eight skins (12.5 percent), or a total of 13,956 skins (9,303 and 9/12 dozen total skins processed times 12.5 percent). *See id.* Although defendants claimed that all of the damaged skins were of the highest grade and would have brought a premium price had they not been damaged, the court concluded that defendants had not proved the quality of skin by a preponderance of the evidence. *See id.* The court "refuse[d] to guesstimate" the actual amount of damages in the case and simply allowed defendants an offset of 12.5 percent of the stipulated amounts owed to Twin City. *See id.*, at 10. The court awarded damages to Twin City in the amount of $49,144.24 from Skins and Leather and $56,609.84 from Potter Leather. *See id.*

Defendants now appeal from the orders of the bankruptcy court, seeking a new trial on the issue of damages.

## II. Finality of Order and Timeliness of Appeal

The initial dispute between the parties is whether the bankruptcy court's denial of defendants' motions regarding admission of the testimony of expert witness Jack Feuer constituted a final order appealable as of right, or whether the order was an interlocutory order appealable only upon entry of a final order. Plaintiff argues that it was a final order and that because defendants brought these appeals well after the expiration of the ten-day statutory period in which to file a notice of appeal, *see* Fed.R.Bankr.Pro. 8002(a), defendants' appeals on this issue must be dismissed. *See* dkt. no. 4 at 3–6. Defendants contend that the order was nonfinal and properly appealable as of right only upon entry of the court's final orders in these adversary proceedings. *See* dkt. no. 5 at 1–3.[2]

2. Although 28 U.S.C. § 158(a) confers jurisdiction upon a district court to hear bankrupt-

 In the bankruptcy context, a flexible standard of finality has emerged, and courts permit immediate appeals which dispose of discrete disputes within the larger case. *See In re Prudential Lines, Inc.*, 59 F.3d 327, 331 (2d Cir.1995) (citing *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1283 (2d Cir.1990)). However, "disputes" does not merely mean competing contentions with respect to separable issues. *See id.* (citing *In re Fugazy Express, Inc.*, 982 F.2d 769, 775 (2d Cir. 1992)). The Second Circuit has summarized the finality standard in bankruptcy cases as follows:

> Given the strong federal policy against piecemeal appeals, a "dispute," for appealability purposes in the bankruptcy context, means *at least an entire claim on which relief may be granted.* Thus, with respect to a meritorious claim for damages, the dispute is not completely resolved until the bankruptcy court determines the amount of damages to be awarded.... [T]he order need not resolve all of the issues raised by the bankruptcy; *but it must completely resolve all of the issues pertaining to a discrete claim, including issues as to the proper relief.*

*Id.* (emphasis in original) (citing *In re Integrated Resources, Inc.*, 3 F.3d 49, 53 (2d Cir.1993)).

 Applying these principles, the bankruptcy court's trial ruling as to the admissibility of Mr. Feuer's videotaped testimony and defendants' alternative request for a continuance was not a final order. The order merely resolved the parties' contentions on evidentiary and case management issues within the larger context of defendants' damages claim and did not resolve the ultimate issue of defen-

dants' entitlement to damages nor fix the amount of those damages. Accordingly, defendants properly sought review of this interlocutory order upon entry of the bankruptcy court's final orders in the proceeding. The parties do not dispute that the appeals from the final orders were timely filed.

### III. Testimony of Jack Feuer

At trial, defendants argued that their expert witness, Jack Feuer, was unavailable to testify because he lived in Cambridge, Massachusetts, and attended graduate school at Harvard University. Defendants sought instead to introduce a videotaped deposition of Mr. Feuer.[3] In the alternative, defendants sought a continuance to allow Mr. Feuer to testify on December 23, 1996, following completion of his final examinations. The bankruptcy court denied both requests, stating:

> I am reluctant to get involved with videotaped testimony. I think there is a great deal of difference. As [I] understand, the witness projected that he was going to be video taped at his residence and there is a great deal of difference, a quantum amount of difference, in testifying in somebody's residence in Cambridge, Massachusetts, as opposed to testifying in Federal Court in Albany, New York, and I would want to see the demeanor of that witness which I could not do. I couldn't ask questions.... [M]y suggestion was that this Court would be flexible over the course of the next two or three weeks to accommodate his schedule.... The response that I saw was that the witness indicated he was available on one day and one day only—that was the 23rd of Decem-

cy appeals from non-final orders, the existence of that discretionary power does not affect the underlying finality of the bankruptcy order in question. *See In re Fugazy Express, Inc.; Shimer v. Fugazy*, 982 F.2d 769, 775 (2d Cir.1992) ("The district court's own decision of an appeal from the bankruptcy court is not a final decision for purposes of appeal ... unless the order of the bankruptcy court was final.").

**3.** Mr. Feuer's deposition was not taken during the discovery period. Defendants sought to hold the deposition, on five days' notice to plaintiff, solely for purposes of videotaping the witness's testimony for use at trial. *See,* letter dated 11–25–96, dkt. no. 1, item 19.

ber.... I am not going to rearrange the whole Court calendar two days before Christmas to accommodate an expert that should have made all of these wishes or problems known months ago when the discovery period was still open.

Transcript of Proceedings dated 11–26–96 ("Trans.II") at 4–5.

### A. *Videotaped Testimony*

 Fed.R.Civ.Pro. 32(a)(3), provides that "[t]he deposition of a witness ... may be used by any party for any purpose if the court finds ... that the witness is at a greater distance than one hundred miles from the place of the trial or hearing." As long as the deposition testimony meets the requirements of the Federal Rules of Evidence, admission of the deposition rests within the sound discretion of the trial court. *See Duttle v. Bandler & Kass,* 127 F.R.D. 46, 49 (S.D.N.Y.1989); *Nash v. Heckler,* 108 F.R.D. 376, 377 (W.D.N.Y. 1985).

The parties do not dispute that at the time his testimony was to be offered, Mr. Feuer was located at least 100 miles from the site of the trial. The issue is thus whether the bankruptcy court abused its discretion in refusing to allow the introduction of the witness's testimony via videotape. The bulk of the reported cases examining the use of deposition testimony at trial address the reading of transcripts of examinations conducted during discovery. *See, e.g., Morgan v. Ward,* 699 F.Supp. 1025, 1048 n. 33 (N.D.N.Y.1988); *Kolb v. County of Suffolk,* 109 F.R.D. 125, 126 (E.D.N.Y.1985); *Nash,* 108 F.R.D. at 377. In those cases, courts have noted a preference for live testimony, particularly in cases in which credibility is an issue, stating that "the inability of the court to observe the deposition witness's demeanor severely hampers its ability to fulfill its fact-finding responsibility." *Morgan,* 699 F.Supp. at 1048 n. 33; *see also, Nash,* 108 F.R.D. at 377 (citing *Napier v. Bossard,* 102 F.2d 467, 469 (2d Cir.1939) (Learned Hand, *J.*) (referring to depositions as "second-best, not to be used when the original

is at hand")). Videotaped testimony and telephone depositions alleviate some of those concerns. *See In re New York Trap Rock Corp.,* 158 B.R. 574, 577 (S.D.N.Y. 1993).

In denying defendants' motion to admit the videotaped testimony of Mr. Feuer, the bankruptcy judge stressed his need to evaluate the demeanor of the witness and his need to ask questions following the witness's testimony. *See* trans. II at 5. Although imperfect, a videotaped deposition, unlike a written transcript, would have permitted the bankruptcy judge some opportunity to evaluate the witness's demeanor. In theory, the court could have further questioned the witness by telephone. The bankruptcy court, however, noted several times in its decision and findings of fact that credibility was a central issue. *See* dkt. No. 1, Item 36, at 7, 8. The court also expressed its reluctance to permit videotaped deposition testimony after discovery had ended and the trial had begun, given the length of time the parties had prior to that time to accomplish this task. *See* trans. II at 4, 5. Given the court's concerns, particularly on the issue of credibility, it cannot be said that the court abused its discretion in denying defendants' request to use videotaped testimony at trial. *See In re Gouiran,* 58 F.3d 54, 58 (2d Cir.1995) (if trial court takes into account all relevant circumstances, reviewing court will, in most cases, affirm trial court's determination, even if reviewing court would have reached a contrary conclusion in the first instance).

### B. *Continuance*

 Defendants argue that the bankruptcy court's denial of their request for a continuance to allow Mr. Feuer to testify was error. I disagree. A trial court's decision to deny a continuance is subject to an abuse of discretion standard. *See Sacharow v. Vogel,* 428 F.2d 1389, 1391 (2d Cir.1970). The administration of justice requires that, absent emergencies, the orderly progress of trials not be sacrificed

or forced to take second place to a witness's convenience. *See id.* at 1390.

In denying defendants' request for a continuance, the bankruptcy judge relied heavily on the fact that the scheduling order in the case had been in effect since July 15, 1996, and that neither party had made a timely request to change the trial date. *See* dkt. No. 1, Item 36, at 4. The court explained:

> Although timely requests were not made, the Court indicated that it would be flexible in allowing Mr. Feuer to testify on a date other than the trial dates of November 12th and November 26th because of his unavailability to testify on either one of those scheduled dates. The Court also informed the parties that it was willing to schedule his testimony at whatever time of day was most convenient for Mr. Feuer, given that he studied in Cambridge, Massachusetts and might have required some time to travel to Albany after a day of classes. Despite the Court bending over backwards to accommodate Mr. Feuer, he indicated that he was only able to testify on December 23rd, *almost one month after the date set to conclude this trial.* The Court made every effort to be fair and accommodating in this case, but was unable and unwilling to schedule his testimony for that date.

*Id.* at 4–5 (emphasis added). Despite its apparent flexibility, the court was confronted with a difficult witness who claimed to be available on only one day. That day was nearly one month after the scheduled conclusion of the trial and two days before Christmas, and the court did not abuse its discretion in denying defendants' last-minute request for a continuance. *See Sacharow,* 428 F.2d at 1390 (denial of request for continuance made during trial not abuse of discretion where counsel had notice of trial date and failed to make timely request for adjournment or continuance); *see also Federal Deposit Ins. Corp. v. Houde,* 90 F.3d 600, 609 (1st Cir.1996) (noting that "[w]hile the court's action was strict, and ... some judges ... would have assessed the situation more charitably," court did not abuse its discretion in denying request for a continuance).

## IV. Testimony of Wayne Brooks

Defendants also argue that the court erred in disregarding the testimony of witness Wayne Brooks, on the ground that Mr. Brooks had a business relationship with the Potter Companies. Mr. Brooks, currently the owner of a leather coloring plant, has been in the leather business for 24 years. *See* trans. I at 105. He testified that he inspected deerskins at the Potter Companies' facility in February 1996 at the request of Larry Potter, owner of the company. *See id.* On *voir dire,* Mr. Brooks testified that he had pursued a business relationship with Larry Potter "off and on" since 1990 and that he hoped to continue that business relationship in the future. *See id.* at 109–110.

Counsel for Twin City objected to the introduction to Mr. Brooks' testimony at trial, arguing that because of the witness's business relationship with the Potter Companies, he could not offer objective testimony. *See id.* at 111. The court allowed counsel to question the witness but cautioned that it had "great hesitation as to the weight that should be ascribed to this witness' testimony" because of his relationship to defendants. *See id.* at 111–113. The court's decision and findings of fact make no further reference to Mr. Brooks or to the weight the court gave to his testimony.

 On appeal, the district court must give due regard to the opportunity of the bankruptcy court to judge the credibility of the witnesses. *See* Fed.R.Bankr. Pro. 8013. A bankruptcy court's factual findings (including credibility judgments) are reviewed for clear error, first by the district court and then by the appellate court. *See In re Colony Hill Assoc.,* 111 F.3d 269, 273 (2d Cir.1997) (citation omitted); *Vermont Microsystems, Inc. v. Autodesk, Inc.,* 88 F.3d 142, 151 (2d Cir.1996); *Flushing Savings Bank v. Teitelbaum (In re Lockwood Enterprises, Inc.),* 70 B.R.

306, 307 (S.D.N.Y.1987). The bankruptcy court was entitled to consider Mr. Brooks' relationship to the defendant companies and their owner, as well as his general demeanor, when determining how much weight to give his testimony. The court's determination that Mr. Brooks' business relationship with Potter Companies might color his testimony was reasonable and not clear error.

## V. Factual Finding on Damages

Finally, defendants argue that the bankruptcy court erred in concluding that Twin City damaged only one-eighth of the skins it processed for the Potter Companies. On appeal, the bankruptcy court's factual findings are reviewed for clear error, *see id.*, and the district court may reverse only if "left with the definitive and firm conviction that a mistake has been committed." *In re Martin,* 208 B.R. 807, 809 (N.D.N.Y.1997) (quoting *In re Abrantes Constr. Corp.,* 132 B.R. 234, 236) (internal quotation omitted), *aff'd sub nom Martin v. Schaap Moving Systems, Inc.,* 152 F.3d 919, 1998 WL 405966 (2d Cir. 1998). Based upon the evidence in the record, I conclude that the bankruptcy court's factual findings were not clearly erroneous.

Larry Potter testified that when the first shipment of finished skins of the 1994–1995 season arrived at his facility, he noticed gouges on the back of the skins which were "uncommon and not the workmanship that [he was] used to seeing from Twin City." Trans. I at 15–16. He testified that he sent his son Charlie to Twin City with one of the damaged skins to make Twin City aware of the problem and to take measures to avoid such problems in the future. *See id.* at 35. He claimed that, despite his efforts, the problem was not resolved and that he continued to see marks on the skins arriving from Twin City. *See id.* at 36. At one point, Mr. Potter went over to Twin City to watch the operation of the fleshing machine and observed the machine causing marks on skins. *See id.* at 39. When the operator noted the problem, he stopped the machine

to sharpen the blade, and the "next few skins" came out fine; however, shortly thereafter, the marks began to appear on the skins again. *See id.* Langdon Marvin, Twin City's owner admitted that he had seen the raw fleshing machine cause marks on skins. *See id.* at 39–40. In spite of his alleged problems with the skins, Potter never complained to Twin City in writing. *See id.* at 64. In a letter he sent to Twin City immediately following receipt of the first shipment of skins, Potter asked Twin City to take more flesh off the skins but never mentioned any marks or gouges on the skins. *See id.* at 69. Moreover, throughout the 1994–1995 season, Potter paid Twin City approximately 1.5 to 2 million dollars for leather processing, *see id.* at 63, and when a payment dispute arose in January 1996, Potter never asserted his non-payment had anything to do with the alleged damage to the skins. *See id.* at 66; trans. II at 44–45. Although Twin City processed skins for other leather companies during that season, none of the other companies complained about damaged skins and none withheld payment for the skins. *See* trans. I at 52–53.

Testimony in the record indicates that Twin City damaged some of Potter's skins; however, Potter failed to offer testimony as to the specific number of skins damaged. Rather, he testified that he did not segregate damaged from undamaged skins, *see* trans. I at 62, and that he kept no records as to the damaged skins. *See id.* at 83. The only testimony in the record regarding the number of skins damaged was that of Richard Garber, who testified that in observing the operation of the fleshing machine, he saw approximately one of every seven to ten skins damaged. *See id.* at 123. Because Potter never complained in writing about the damage and continued to pay Twin City throughout the 1994–1995 season, it is reasonable to conclude that the damage to the skins was not pervasive. Based upon a review of the whole record, the bankruptcy court's conclusion that Twin City damaged one in eight of defendants' skins was not

clearly erroneous. *See In re Maxwell Newspapers, Inc.,* 981 F.2d 85, 91 (2d Cir. 1992) (citing *Anderson v. City of Bessemer,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)) (where there is a plausible view of the evidence, considering entire record, a fact finder's determination to adopt that view may not be held to be clearly erroneous).

On the issue of damages, defendants offered only Larry Potter's conclusory statements that their actual sales for the 1994–1995 season differed from their projected sales as a result of Twin City's damage to the skins. *See* trans. I at 55. Defendants failed to offer evidence establishing, by a preponderance of the evidence, the grade of the damaged skins or the effect of the damage on their value. Accordingly, the bankruptcy judge's refusal to speculate as to the precise value of defendants' alleged loss was not unreasonable.

Based upon the foregoing, it is therefore

ORDERED that the orders of the Bankruptcy Court are AFFIRMED in their entirety.

IT IS SO ORDERED.